DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C3-01-20
Baltimore, Maryland 21244-1850
Telephone 410-786-3176 Facsimile 410-786-0043




**Office of the Attorney Advisor** Rec - 10.13.05 Via Fedex

OCT 1 2 2005

**VIA OVERNIGHT MAIL**

FILED

DEC 0 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Mr. Albert J. Lucas
Calfee, Halter & Griswold, LLP
1100 Fifth Third Center
21 East State Street
Columbus, OH 43215-4231

Re: Ashtabula County Medical Center; The Community Hospital; Akron General Medical Center; Lima Memorial Hospital and The Toledo Hospital, PRRB No. 2005-D49

Dear Mr. Lucas:

Enclosed is a copy of the Administrator's decision in the above case reversing the decision of the Provider Reimbursement Review Board. This constitutes the final administrative decision of the Secretary of the Health and Human Services. Pursuant to Section 1878(f) of the Social Security Act and 42 CFR 405.1877, the Provider may obtain judicial review by filing a civil action within 60 days of receipt of this decision.

Sincerely yours,

Jacqueline R. Vaughn
Attorney Advisor

Enclosure

cc: Bernard M. Talbert, Esquire, Intermediary's Representative

# CENTERS FOR MEDICARE AND MEDICAID SERVICES

*Decision of the Administrator*

**In the case of:**

**Ashtabula County Medical Center; The Community Hospital; Akron General Medical Center; Lima Memorial Hospital and The Toledo Hospital**

**Provider**

**vs.**

**Blue Cross /Blue Shield Association AdminiStar Federal, Inc.**

**Intermediary**

**Claim for:**

**Provider Cost Reimbursement Determination for Cost Reporting Periods Ending: Various**

**Review of:**
**PRRB Dec. No. 2005-D49**
**Dated: August 10, 2005**

---

This case is before the Administrator, Centers for Medicare & Medicaid Services (CMS), for review of the decision of the Provider Reimbursement Review Board (Board). The review is during the 60-day period in Section 1878(f) (1) of the Social Security Act (Act), as amended (42 USC 1395oo (f)). The Center for Medicare Management (CMM) submitted comments, requesting reversal of the Board's decision. Accordingly, the parties were notified of the Administrator's intention to review the Board's decision. Comments were also received from the Intermediary requesting reversal of the Board's decision. Finally, comments were received from the Providers' requesting that the Administrator affirm the Board's decision. All comments were timely received. Accordingly, this case is now before the Administrator for final agency review.

## ISSUE AND BOARD'S DECISION

The issue is whether the Intermediary's adjustment excluding patient days related to Ohio's Hospital Care Assurance Program (HCAP) from the Providers' disproportionate share (DSH) calculation was proper.

The Board held that the Intermediary's adjustment improperly excluded HCAP patient days from the Providers' DSH calculations. In reaching this determination, the Board concluded that the DSH statute was not limited to only Medicaid patients, but included patients who qualify for "medical assistance" under the Ohio HCAP State Plan that was approved under

Title XIX.[1] Therefore, since the Ohio HCAP State Plan was approved under Title XIX, the HCAP days should be included in the Medicaid proxy to determine the Providers' DSH adjustment.

**SUMMARY OF COMMENTS**

CMM commented requesting that the Administrator reverse the Board's decision. Specifically, CMM requested reversal of the Board's decision on grounds that the inpatient days associated with Ohio HCAP program were not provided to Medicaid eligible patients. CMM stated that under Section 1886(d)(5)(F)(vi) of the Act a portion of a hospital's DSH percentage is based on a calculation referred to as the Medicaid fraction. Clause (II) of that paragraph indicates that the Medicaid fraction is computed by dividing the number of patient days furnished to patients who, for those days, were eligible for Medicaid but who where not entitled to benefits under Medicare Part A by the number of total hospital patient days in the same period. Thus, to be included in the Medicaid fraction, the inpatient days associated with the HCAP program must be furnished to Medicaid eligible patients. CMM pointed out that the State explains that the HCAP is Ohio's version of the federally required [Medicaid] DSH program. HCAP compensates hospitals that provide a disproportionate share of care to indigent patients (Medicaid consumers, people below the poverty line and people without health insurance. The Medicaid DSH program is separate and distinct from the Medicare DSH adjustment. People below the poverty line are not necessarily eligible for medical assistance under a Title XIX approved State plan. Similarly, people without health insurance are by definition not eligible for medical assistance under the State plan.

CMM pointed out that Chapter 5112 of the Ohio Revised Code confirms that not all individuals whose income is below the Federal poverty guidelines are eligible for Medicaid, which is a further indication that not all inpatient days associated with the HCAP program are provided to Medicaid eligible patients. In particular, Section 5112.17(B) of the Ohio Revised Code states that:

> Each hospital that receives funds distributed under sections 5112.01 to 5112.21 of the revised code shall provide, without charge to the individual, basic, medically necessary hospital-level services to individuals who are residents of this state, *are not recipients of the medical assistance program*, and whose income is at or below the federal poverty guidelines.

---

[1] The record contains the Ohio State plan that was approved effective January 1, 2001. Providers' Exhibit P-8. Reference is made to prior year approval of the Ohio HCAP program as part of the Ohio State Plan under title XIX at Provider's Amended Final Position Paper at 6, fn.2. However, the State plan approved for the cost reporting periods at issue in this case are not in the record.

Section 5112.01(G) of the Ohio Revised Code explains that "medical assistance program" means the program of medical assistance established under Section 5111.01 of the Revised Code and Title XIX of the Social Security Act. These provisions make clear that while the inpatient days associated with the HCAP program are used in determining the Medicaid DSH adjustment by the State of Ohio, not all of the inpatient days that are used in the HCAP calculation are provided to Medicaid eligible patients. CMM stated that by law, the HCAP inpatient days provided to patient that are not eligible for Medicaid should be excluded from the numerator of Medicaid fraction to determine a hospital's Medicare DSH payments.

CMM stated that the Program Memorandum (PM) A-99-62 outlines which days are to be included in the Medicaid fraction of the Medicare DSH calculation. Program Memorandum A-99-62 identifies Medicaid DSH days as days that are ineligible for inclusion in the Medicare DSH calculation. These excluded days include days described as days for patients who are not eligible for Medicare benefits, but are considered in the calculation of Medicaid DSH payments by the State. Regarding these days, the PM A-99-62 explained that:

> These patients are not Medicaid-eligible. Sometimes Medicaid State plans specify that Medicaid DSH payments are based upon a hospital's amount of charity care or general assistance days. This, however, is not "payment" for those days, and does not mean that the patient is eligible for Medicaid benefits or can be counted as such in the Medicare formula.

Therefore, given the fact that the State of Ohio regulations specify that not all of inpatient days associated with the HCAP program are provided to Medicaid eligible patients, the Intermediary correctly excluded HCAP inpatients days from the Medicare DSH calculation that were not provided to Medicaid eligible patients.

The Intermediary submitted comments requesting that the Administrator reverse the Board's decision. The Intermediary concurred with CMM's comments. The Intermediary also argued that the use of the word "medical assistance" in the statute and the use of the word "Medicaid" in the regulation are interchangeable, both meaning that Medicaid eligibility is required to be included in the Medicaid proxy. Accordingly, since the Ohio State HCAP provides help to individuals who are not eligible for Medicaid, they cannot be included in the numerator for purposes of determining the Providers' DSH percentage.

The Intermediary also reviewed the statutory Medicaid DSH provisions which are based on either a hospital's Medicaid inpatient utilization rate or a hospital's low-income utilization rate. The Intermediary pointed out that these terms are not interchangeable. The HCAP revenues are included in the calculation of the low-income utilization rate for purposes of the Medicaid DSH. This was a means by which Ohio raised cash to subsidize hospital care for Ohio residents who did not qualify for Medicaid and to take advantage of the Federal matching funds for Medicaid DSH.

The Intermediary stated that similar to the calculation of the Medicaid DSH payment, the HCAP days are categorically excluded from being classified as patients eligible for medical assistance under a State plan approved under Title XIX. Title XIX sets forth the appropriations for "medical assistance" at section 1901 of the Act, while section 1902(a)(10) sets forth those individuals for whom "medical assistance" may be eligible. Both underline the fact that the term "medical assistance" is not a general term used to describe people in need for whom a State decides to offer some relief. Rather, the term "medical assistance" has a precise meaning including the identification of individuals who maybe covered. State funded programs like HCAP which by operation of State law help out individuals who are not recipients of Medicaid are not included in the Medicaid proxy definitions.

The Intermediary pointed out that this case was similar to the facts presented in Jersey Shore Medical Center, PRRB Dec. No. 99-D4. The Administrator in that case noted that the payment of Federal Financial Participation funds (FFP) under the Medicaid DSH provisions was not necessarily evidence that related days were for individuals "eligible for medical assistance under a State plan approved under title XIX.." As in that case, here any Federal matching funds are limited to the payment for the Medicaid DSH to the extent it incorporates HCAP patients into the Section 1923 "low-income utilization" Medicaid DSH payments.

The Providers commented requesting that the Administrator affirm the Board's decision. The Providers argued that a plain reading of the Act requires that HCAP days be included in the Providers' DSH calculation because HCAP is part of Ohio's State plan approved under title XIX. Furthermore, the Providers argued that the Intermediary is incorrect that the statute and the implementing regulation read collectively mean that Medicaid eligibility is required to be included in the Medicaid proxy. The DSH statute does not require that a patient day be "eligible for Medicaid." It only requires that the patient day "be eligible for medical assistance under a State plan approved under title XIX.

**DISCUSSION**

The entire record, which was furnished by the Board, has been examined, including all correspondence, position papers, and exhibits. The Administrator has reviewed the Board's decision. All comments received timely are included in the record and have been considered.

Relevant to the issue involved in this case, two Federal programs, Medicaid and Medicare involve the provision of health care services to certain distinct patient populations. The Medicaid program is a cooperative Federal-State program that provides health care to indigent persons who

are aged, blind or disabled or members of families with dependent children.[2] The program is jointly financed by the Federal and State governments and administered by the States according to Federal guidelines. Medicaid, under Title XIX of the Social Security Act, establishes two eligibility groups for medical assistance: categorically needy and medically needy. Participating States are required to provide Medicaid coverage to the categorically needy.[3] The "categorically needy" are persons eligible for cash assistance under two Federal programs: Aid to Families with Dependent Children (AFDC) [42 USC 601 et. seq.] and Supplemental Security Income or SSI [42 USC 1381, et. seq.]. Participating States may elect to provide for payments of medical services to those aged blind or disabled individuals known as "medically needy" whose incomes or resources, while exceeding the financial eligibility requirements for the categorically needy (such as an SSI recipient) are insufficient to pay for necessary medical care.[4]

In order to participate in the Medicaid program, a State must submit a plan for medical assistance to CMS for approval. The State plan must specify, inter alia, the categories of individuals who will receive medical assistance under the plan and the specific kinds of medical care and services that will be covered.[5] If the State plan is approved by CMS, the State is thereafter eligible to receive matching payments from the Federal government based on a specified percentage (the Federal medical assistance percentage) of the amounts expended as medical assistance under the State plan.

Within broad Federal rules, States enjoy a measure of flexibility to determine "eligible groups, types and range of services, payment levels for services, and administrative and operating procedures.[6] In particular, the Medicaid statute sets forth a number of requirements, including income and resource limitations that apply to individuals who wish to receive medical assistance under the State plan. Individuals who do not meet the applicable requirements are not eligible for medical assistance under the State plan.

Section 1901 of the Social Security Act sets forth that appropriations under that title are "[f]or the purpose of enabling each State, as far as practicable under the conditions in such State, to furnish medical assistance on behalf of families with dependent children and of aged, blind or disabled individuals whose incomes and resources are insufficient to meet the costs of necessary medical services…." Section 1902 sets forth the criteria for State plan approval. As part of a State plan, Section 1902(a)(13)(A)(iv) requires that a State plan provide for a public process for determination of payment under the plan for, inter alia, hospital services which in the case of hospitals, take into account (in a manner consistent with section 1923) the situation of hospitals which serve a disproportionate number of low-income patients with special needs. Section 1905

---

[2] Section 1901 of the Social Security Act (Act) (Pub. Law 89-97.)

[3] Section 1902(a) (10) of the Act.

[4] Section 1902(a) (1) (C) (i) of the Act.

[5] Id. § 1902 et. seq. of the Act.

[6] Id.

defines the term "medical assistance" within the context of the payment of part or all of the costs of certain specified care and medical services and the identification of certain individuals for whom payment maybe made.

Section 1923 of the Act implements the requirements that a State plan under Title XIX provide for an adjustment in payment for inpatient hospital services furnished by a disproportionate share hospital. A hospital maybe deemed to be a Medicaid disproportionate share hospital pursuant to Section 1923(b)(1)(A), which addresses a hospital's Medicaid inpatient utilization rate,[7] or under paragraph (B), which addresses a hospital's low-income utilization rate.[8] The latter criteria relies, inter alia, on the total amount of the hospital's charges for inpatient services which are attributable to charity care.

While Title XIX implemented medical assistance pursuant to a cooperative program with the States for certain low-income individuals, the Social Security Amendments of 1965[9] established title XVIII of the Act, which authorized the establishment of the Medicare program to pay part of the costs of the health care services furnished to entitled beneficiaries. The Medicare program primarily provides medical services to aged and disabled persons and consists of two Parts: Part A, which provides reimbursement for inpatient hospital and related post-hospital, home health,

---

[7] Section 1923(b)(2) explains that for purposes of paragraph (1)(A), "the term 'medicaid inpatient utilization rate' means, for a hospital, a fraction .....the numerator of which is the hospital's number of inpatient days attributable to *patients who (for such days) were eligible for medical assistance under a State plan approved under this title* in a period ...., and the denominator of which is the total number of the hospital's inpatient days in that period....." (Emphasis added.)

[8] Section 1923(b)(3) explains that "for purposes of paragraph (1)(B), the term 'low-income utilization rate' means, for a hospital, the sum of— (A) the fraction ....— (i) the numerator of which is the sum (for a period) of (I) the total revenues paid the hospital for patient services under a State plan under this title .... and (II) the amount of the cash subsidies for patient services received directly from State and local governments, and (ii) the denominator of which is the total amount of revenues of the hospital for patient services (including the amount of such cash subsidies) in the period; and (B) a fraction (expressed as a percentage)— (i) the numerator of which is the total amount of the hospital's charges for inpatient hospital services which are attributable to charity care in a period, less the portion of any cash subsidies described in clause (i)(II) of subparagraph (A) in the period reasonably attributable to inpatient hospital services, and (ii) the denominator of which is the total amount of the hospital's charges for inpatient hospital services in the hospital in the period. The numerator under subparagraph (B)(i) shall not include contractual allowances and discounts (other than for indigent patients not eligible for medical assistance under a State plan approved under this title)."

[9] Pub. Law No. 89-97.

and hospice care,[10] and Part B, which is supplemental voluntary insurance program for hospital outpatient services, physician services and other services not covered under Part A.[11] At its inception in 1965, Medicare paid for the reasonable cost of furnishing covered services to beneficiaries.[12] However, concerned with increasing costs, Congress enacted Title VI of the Social Security Amendments of 1983.[13] This provision added § 1886(d) of the Act and established the inpatient prospective payment system (IPPS) for reimbursement of inpatient hospital operating costs for all items and services provided to Medicare beneficiaries, other than physician's services, associated with each discharge. The purpose of IPPS was to reform the financial incentives hospitals face, promoting efficiency by rewarding cost effective hospital practices.[14]

These amendments changed the method of payment for inpatient hospital services for most hospitals under Medicare. Under IPPS, hospitals and other health care providers are reimburse their inpatient operating costs on the basis of prospectively determined national and regional rates for each discharge rather than reasonable operating costs. Thus, hospitals are paid based on a predetermined amount depending on the patient's diagnosis at the time of discharge. Hospitals are paid a fixed amount for each patient based on one of almost 500 diagnosis related groups (DRG) subject to certain payment adjustments.

Concerned with possible payment inequities for IPPS hospitals that treat a disproportionate share of low-income patients, pursuant to Section 1886(d) (5) (F) (i) of the Act, Congress directed the Secretary to provide, for discharges occurring after May 1, 1986, "for hospitals serving a significantly disproportionate number of low-income patients…."[15]

There are two methods to determine eligibility for a Medicare DSH adjustment: the "proxy method" and the "Pickle method."[16] To be eligible for the DSH payment under the proxy method, an IPPS hospital must meet certain criteria concerning, inter alia, its disproportionate patient percentage. Relevant to this case, with respect to the proxy method, Section 1886 (d)(5)(F)(vi) of the Act states that the terms "disproportionate patient percentage" means the sum of two fractions which is expressed as a percentage for a hospital's cost reporting period. The fractions are often referred to as the "Medicare low-income proxy" and the Medicaid low-income proxy", respectively, and are defined as follows:

---

[10] Section 1811-1821 of the Act.

[11] Section 1831-1848(j) of the Act.

[12] Under Medicare, Part A services are furnished by providers of services.

[13] Pub. Law No. 98.21.

[14] H.R. Rep. No. 25, 98th Cong., 1st Sess. 132 (1983).

[15] Section 9105 of the Consolidated Omnibus Budget Reconciliation Act of 1985 (Pub. L. No. 99-272). See also 51 Fed. Reg. 16772, 16773-16776 (1986).

[16] The Pickle method is set forth at section 1886(d) (F) (i) (II) of the Act.

> (I) the fraction (expressed as a percentage) the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under Part A of this title and were entitled to supplemental security income benefits (excluding any State supplementation) under title XVI of this Act and the denominator of which is the number of such hospital's patients day for such fiscal year which were made up of patients who (for such days) were entitled to benefits under Part A of this title.
>
> (II) the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consists of patients who (for such days) were eligible for medical assistance under a State Plan approved under title XIX, but who were not entitled to benefits under Part A of this title, and the denominator of which is the total number of the hospital patient days for such period. (Emphasis added.)

CMS implemented the statutory provisions at 42 CFR 412.106. The first computation, the "Medicare proxy" or "Clause I" is set forth at 42 CFR 412.106(b)(2). Relevant to this case, the second computation, the "Medicaid-low income proxy", or "Clause II", is set forth at 42 CFR 412.106(b) (4) (1995) and provides that:

> *Second computation.* The fiscal intermediary determines, for the hospital's cost reporting period, the number of patient days furnished to patients entitled to Medicaid but not to Medicare Part A, and divides that number by the total number of patient days in the same period.

Although not at issue in this case, CMS revised 42 C.F.R. 412.106(b)(4) to conform to HCFA Ruling 97-2, which was issued in light of Federal Circuit Court decisions disagreeing with CMS' interpretation of a certain portion of § 1886(d)(5)(vi)(II) of the Act. In conjunction with this revision, CMS issued a Memorandum dated June 12, 1997, which explained the counting of patient days under the Medicaid fraction, stating that:

> [I]n calculating the number of Medicaid days, fiscal intermediaries should ask themselves, "Was this person a Medicaid (Title XIX beneficiary on that day of service?' If the answer is "yes," the day counts in the Medicare disproportionate share adjustment calculation. This does not mean that title XIX had to be responsible for payment for any particular services. It means that the person had to have been determined by a State agency to be eligible for Federally-funded medical assistance for any one of the services covered under the State Medicaid Title XIX plan (even if no Medicaid payment is made for inpatient hospital services or any other covered service)....

In order to clarify the definition of eligible Medicaid days and to communicate a hold harmless position for cost reporting periods beginning before January 1, 2000, for certain providers, CMS issued Program Memorandum (PM) A-99-62, dated December 1999.[17] With respect to the days to be included in the Medicaid proxy, the PM A-99-62 stated that the hospital must determine whether the patient was eligible for Medicaid under a State plan approved under Title XIX on the day of service. The PM explained that:

> In calculating the number of Medicaid days, the hospital must determine whether the patient was eligible for Medicaid under a State plan approved under Title XIX on the day of service. If the patient was so eligible, the day counts in the Medicare disproportionate share adjustment calculation. The statutory formula for Medicaid days reflects several key concepts. First, the focus is on the patients eligibility for Medicaid benefits as determined by the State, not the hospital's eligibility for some form of Medicaid payment. Second, the focus is on the patient's eligibility for medical assistance under an approved Title XIX state plan, not the patient's eligibility for general assistance under a State-only program, Third, the focus is on eligibility for medical assistance under an approved Title XIX State plan, not medical assistance under a State-only program or other program. Thus, for a day to be counted, the patient must be eligible on that day for medical assistance benefits under the Federal–State cooperative program known as Medicaid (under an approved Title XIX State plan).

Consistent with this explanation of days to be included in the Medicare DSH calculation, the PM stated regarding the exclusion of days, that:

> Many States operate programs that include both State-only and Federal-State eligibility groups in an integrated program…. These beneficiaries, however, are not eligible for Medicaid under a State plan approved under Title XIX, and therefore, days utilized by these beneficiaries do not count in the Medicare disproportionate share adjustment calculation. If a hospital is unable to distinguish between Medicaid beneficiaries and other medical assistance beneficiaries, then it must contact the State for assistance in doing so.
>
> In addition, if a given patient day affects the level of *Medicaid* DSH payments to the hospital but the patient is not eligible for Medicaid under a State plan approved under title XIX on that day, the day is not included in the *Medicare* DSH calculation.
>
> . . .

---

[17] The PM provided a hold harmless provision which was not raised as being applicable to the appeals at issue in this case.

> Regardless of the type of allowable Medicaid day, the hospital bears the burden of proof and must verify with the State that the patient was eligible under one of the allowable categories during each day of the patient's stay. The hospital is responsible for and must provide adequate document to substantiate the number of Medicaid days claimed. [18] (Emphasis added.)

The Secretary reasserted, in the August 1, 2000 *Federal Register*, his policy regarding general assistance days, State-only health program days and charity care days.

> General assistance days are days for patients covered under a State-only or county-only general assistance program, whether or not any payment is available for health care services under the program. Charity care days are those days that are utilized by patients who cannot afford to pay and whose care is not covered or paid by any health insurance program. While we recognize that these days may be included in the calculation of a State's Medicaid DSH payments, these patients are not Medicaid eligible under the State plan and are not considered Titled XIX beneficiaries.[19]

In this case, involves sixteen different appeals brought by five Ohio Providers. The Providers' receive funding under the Ohio Hospital Care Assurance Program (HCAP). The Providers argue that the patient days relating to HCAP should be included in the numerator of the "Medicaid proxy" disproportionate share hospital (DSH) payment calculation. The Providers contend that a plain reading of the Section 1886(d)(5)(F) of the Social Security Act requires that HCAP days be included in the Providers' DSH calculation because HCAP is part of Ohio State plan approved under Title XIX. The Board held that the Intermediary's adjustment improperly excluded HCAP patient days from the Providers' DSH calculations.

---

[18] An attachment to the PM describes the type of day, description of the day and whether the day is a Title XIX day for purposes of the Medicare DSH calculation. In particular, the attachment describes "general assistance patient days" as "days for patients covered under a State–only (or county only) general assistance program (whether or not any payment is viable for health care services under the program). These patients are not Medicaid–eligible under the State plan." The general assistance patient day is not considered an "eligible Title XIX day." "Other State-only health program patient days" are described as "days for patients covered under a State-only health program. These patients are not Medicaid-eligible under the State program." Likewise, State-only health program days are not eligible Title XIX days. Finally, charity care patient days are described as "days for patients not eligible for Medicaid or any other third-party payer and claimed as uncompensated care by a hospital. These patients are not Medicaid eligible under the State plan." Charity care patient days are not eligible Title XIX days.

[19] 65 Fed. Reg. 47054 at 47087 (Aug. 1, 2000).

Chapter 5112 of the Ohio Revised Code implements the Ohio State Hospital Care Assurance Program. The Ohio State Hospital Care Assurance Program is described as "Ohio's version of the federally required Disproportionate Share Hospital program. HCAP compensates hospitals that provide a disproportionate share of care to indigent patients (Medicaid consumers, people below the poverty line and people without health insurance)."[20] Section 5112.17(B) of the Ohio Revised Code states that:

> Each hospital that receives funds distributed under section 5112.01 to 5112.21 of the Revised Code shall provide, without charge to the individual, basic, medically necessary hospital-level services to individuals who are residents of this state, *are not recipients of the medical assistance program*, and whose income is at or below the federal poverty guidelines.[21] (Emphasis added.)

Thus, hospitals that receive funds paid under the Hospital Care Assurance Program (an indigent care pool)[22] are to provide without charge medically necessary hospital-level services to individuals that are not recipients of the medical assistance program.

A review of the case shows that the days at issue are related to individuals that are specifically identified as not eligible for medical assistance under an approved Title XIX State plan. However in order to receive the Ohio version of the Medicaid DSH payment, a hospital is required to provide medical services without charge to these individuals.[23] The Administrator finds that the language set forth in section 1886(d)(5)(F)(vi)(II) requires that the day be related to an individual eligible for "medical assistance under Title XIX" also known as the Federal program Medicaid. The use of the term "medical assistance" at Sections 1901 and 1905 of the Social Security Act and the use of the term "medical assistance" at Section 1886(d)(5)(F)(vi)(II) of the Social Security Act is reasonably concluded to have the same meaning. As noted by the courts, "the interrelationship and close proximity of these provisions of the statute presents a classic case for the application of the normal rule of statutory construction that "identical words used in different parts of

---

[20] See http://jfs.ohio.gov/ohp/bhpp/hcap/.

[21] Ohio Revised Code Section 5112.17(B).

[22] Chapter 5111.01 of the Ohio Revised Code sets out the eligibility for medical programs and explains that "as used in this chapter 'medical assistance program' or 'medicaid' means the program that is authorized by this chapter and provide by the department of job and family services under this chapter, Title XIX of the Social Security Act.... as amended and the waivers of Title XIX requirements granted to the department by [CMS]

[23] The Ohio State Medicaid DSH formula and how the days, costs, or charges, related to the individuals at issue are used in the formula is not discuss in detail.

the same act are intended to have the same meaning."[24] Therefore, the Administrator reads the language at section 1886(d)(5)(F)(vi)(II) that states that the numerator "is the number of the hospital's patients days for such period which consists of patients who (for such days) were eligible for medical assistance under a State Plan approved under title XIX," to require that for a day to be counted, the individual must be eligible for medical assistance under Title XIX, that is, the individual must be eligible for the Federal government program also referred to as Medicaid. Notably, the days involved in this case are related to individuals that are not eligible for medical assistance as that term is used under Title XIX and, thus, are not properly included in the Medicaid proxy of the Medicare DSH calculation under Section 1886(d)(5)(F)(vi)(II) of the Act.

The Administrator finds that the Intermediary properly excluded the Ohio HCAP days at issue from the numerator of the Medicaid fraction to the extent that these HCAP days were associated with individuals who are not eligible for medical assistance under a State plan approved under Title XIX, i.e., the Federal program called Medicaid. The Ohio State Medicaid DSH program may involve some expenditure of Federal financial participation (FFP) based on the uncompensated care provided to individuals by these hospitals;[25] however, the uncompensated care is by definition for individuals not eligible for Medicaid. The approval of the Ohio State Medicaid DSH provision under the State plan and the expenditure of Medicaid DSH FPP does not constitute "medical assistance" for the individuals at issue in this case as that term is used under Title XIX and Title XVIII.

---

[24] Sullivan v. Stroop, 496 U.S. 478, 484 (1990); Commissioner v. Lundy, 516 U.S. 235, 250 (1996).

[25] For purposes of distributing funds to hospitals under, inter alia, the medical programs pursuant to sections 5112.01 to 5112.21 of the Ohio Revised Code, Section 5112.06 sets forth annual assessments on hospitals based on the hospital's total facility costs. In addition, Section 5112.08 of the Ohio Revised Code sets forth the methods of distributing to hospitals all money in the indigent care pool. See http://jfs.ohio.gov/ohp/bhpp/hcap ("A portion of the pool is collected in the form of assessments to providers with the balance of the funds provide by the Federal government under the Section 1923 of the Act (the Medicaid DSH provision). See Id. showing each provider's assessment and DSH payment amount.

**DECISION**

The decision of the Board is reversed in accordance with the foregoing opinion.

**THIS CONSTITUTES THE FINAL ADMINISTRATIVE DECISION OF THE SECRETARY OF HEALTH AND HUMAN SERVICES.**

Date: 10/11/05

Leslie V. Norwalk, Esq.
Deputy Administrator
Centers for Medicare & Medicaid Services