IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ASHTABULA COUNTY MEDICAL CENTER, et al. | ) | CASE NO: 1:05CV-02365(RWR) |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL O. LEAVITT, Secretary, United States Department of Health and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF MATERIAL FACTS ............................................................................. 3

    A.    THE MEDICARE PROGRAM ........................................................................ 3

    B.    THE DSH ADJUSTMENT ............................................................................. 3

    C.    STATE MEDICAL ASSISTANCE PLANS UNDER TITLE XIX ...................... 4

    D.    OHIO'S HCAP PROGRAM ........................................................................... 5

ARGUMENT ..................................................................................................................... 5

    A.    STANDARD OF REVIEW .............................................................................. 5

    B.    HCAP PROGRAM DAYS MUST BE INCLUDED IN THE DSH CALCULATION BECAUSE HCAP IS A PROGRAM OF MEDICAL ASSISTANCE APPROVED UNDER TITLE XIX OF THE SOCIAL SECURITY ACT ........................................................... 6

    1.    THE DSH STATUTE CLEARLY AND UNAMBIGUOUSLY REQUIRES THAT THE DSH CALCULATION INCLUDE PATIENT DAYS FOR PATIENTS WHO ARE ELIGIBLE FOR "MEDICAL ASSISTANCE UNDER A STATE PLAN APPROVED UNDER TITLE XIX." ................................................ 6

    2.    THE OHIO HCAP PROGRAM IS PART OF OHIO'S STATE PLAN OF MEDICAL ASSISTANCE APPROVED UNDER TITLE XIX. ................................................................................. 8

    3.    THE PRRB HAS DETERMINED THAT PROGRAMS OF MEDICAL ASSISTANCE LIKE THE HCAP PROGRAM SHOULD BE INCLUDED IN THE DSH CALCULATION. ............................ 11

    4.    THIS COURT SHOULD REJECT THE SECRETARY'S FLAWED ASSERTION THAT THE TERM "MEDICAL ASSISTANCE" MEANS ONLY TRADITIONAL MEDICAID. ....................... 14

CONCLUSION ................................................................................................................ 17

# Table of Authorities

**Cases**

Alhambra v. Thompson, 259 F.3d 1071 (9th Cir. 2001) ........................................................ 13, 14

Ashtabula County Med. Ctr. v. BlueCross BlueShield Assoc., Decision 2005-D49
  (August 10, 2005) ........................................................................................................ 1, 12

Cabell Huntington Hosp., Inc. v. Shalala, 101 F.3d 984 (4th Cir.1996) ..................................... 13

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................................................. 6

Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837 104, S. Ct. 2778, 81 L. Ed 2d 694
  (1984) ............................................................................................................................... 6

Clark Regional Medical Center v. Shalala, 136 F. Supp. 2d 667 (E.D. Ky. 2001) ..................... 13

Cookeville Regional Medical Center v. Thompson, 2005 U.S. Dist. LEXIS 33351
  (D.C. Dist. 2005) ............................................................................................................ 14

Deaconess Health Serv. Corp. v. Shalala, 8.3 F.3d 1041 (8th Cir.1996) ............................... 13, 14

Diamond v. Atwood, 43 F.3d 1538 (D.C. Cir. 1995) ..................................................................... 6

Jersey Shore Medical Center v. Blue Cross and Blue Shield Association, 1998
  WL 773617 at * 8 (PRRB October 30, 1998, Case No. 95-0907) ..................................... 11, 12

Jewish Hospital., Inc. v. Seely of Health & Human Servs., 19 F.3d 270 (6th Cir.
  1994) .............................................................................................................................. 13

Legacy Emanuel Hosp. & Health Ctr. v. Shalala, 97 F.3d 1261 (9th Cir. 1996) ........................ 13

Monmouth Medical Center v. Thompson, 257 F.3d 807 (D.C. Cir. 2001) ................................... 13

Odessa Regional Hospital v. Leavitt, 386 F.Supp. 2d 885 (W.D. Tex. 2005) ............................. 13

Portland Adventist Medical Center v. Thompson, 399 F.3d 1091 (9th Cir. 2005) .............. passim

**Statutes**

42 U.S.C. § 1315 ...................................................................................................................... 10, 16

42 U.S.C. § 1395oo(f)(2) .............................................................................................................. 2

42 U.S.C. § 1395ww(d)(5)(F) .................................................................................................... 1, 3

42 U.S.C. § 1395ww(d)(5)(F)(vi) ......................................................................................... passim

42 U.S.C. § 1396 ................................................................................................................ 4, 8

42 U.S.C. § 1396a(a)(13)(A)(iv) ................................................................................... passim

42 U.S.C. § 1396b and §1396c ............................................................................................. 10

42 U.S.C. § 1396b(a) ............................................................................................................ 10

42 U.S.C. § 1396d .................................................................................................................. 16

42 U.S.C. § 9902 ..................................................................................................................... 9

42 U.S.C. §§ 1393b; 1396r-4(f) ............................................................................................ 11

42 U.S.C. §§ 1395-1395ggg .................................................................................................. 10

42 U.S.C. §§ 1395c, 1395d ..................................................................................................... 3

O.R.C. § 5112 ................................................................................................................ 1, 5, 9

O.R.C. § 5112.17 .......................................................................................................... 5, 16

O.R.C. § 5112.18 ................................................................................................................... 5

O.R.C. 5112.08 ............................................................................................................. 9, 16

Pub. L. No. 99-272, § 9105, 100 Sta. 82 (1986) ................................................................. 3

**Rules**

Fed. R. Civ. P. 56 ............................................................................................................ 1, 6

**Regulations**

Interim Final Rule, 65 Fed. Reg. 3136 (Jan. 20, 2000) ....................................................... 17

Rule 5101:3-07.17 .................................................................................................................. 1

## PRELIMINARY STATEMENT

This matter involves sixteen different appeals brought by five Ohio hospitals who challenge the Intermediary's refusal to include Ohio Hospital Care Assurance Program ("HCAP") Days in the Providers' Medicare Disproportionate Share ("DSH") calculation.  In the proceedings below, the Provider Reimbursement Review Board ("PRRB") unanimously concluded that the Federal DSH statute, codified at 42 U.S.C. § 1395ww(d)(5)(F), required that Ohio HCAP days be included in the DSH calculation.  The PRRB succinctly stated that the "language [was] clear and unambiguous and ... that the federal DSH statute does not limit the patients covered to Medicaid patients only, but that it includes patients who qualify for 'medical assistance' under Ohio's HCAP State Plan that is approved under Title XIX."  Ashtabula County Med. Ctr. v. BlueCross BlueShield Assoc., Decision 2005-D49 (August 10, 2005) (Record "R." 53), copy attached hereto as Exhibit A.

Under the Medicare Statute, hospitals that treat a disproportionately high number of low-income patients are entitled to receive an additional Medicare payment called a DSH adjustment.  See 42 U.S.C. § 1395ww(d)(5)(F).  In order to qualify for a DSH adjustment, the hospital must meet a specified "disproportionate share percentage," which is defined as the sum of two fractions designed to act as proxies reflecting the number of low-income patients served.  See 42 U.S.C. § 1395ww(d)(5)(F)(vi).  This case involves the second of the two fractions, which represents all patients days not entitled to Medicare Part A benefits, but which are eligible for medical assistance under a State plan approved under Title XIX.  See 42 USC § 1395ww(d)(5)(F)(vi)(II).

Ohio's HCAP program, codified at Ohio Revised Code ("O.R.C.") § 5112 et seq. and Ohio Administrative Code ("O.A.C.") Rule 5101:3-07.17 et seq., provides medical assistance to

low-income Ohio patients.  The Ohio HCAP program is part of Ohio's State Plan approved under Title XIX and, as such, Ohio HCAP Program Days should included in the DSH calculation under 42 USC § 1395ww(d)(5)(F)(vi)(II).

For the years at issue in their Complaint, the Plaintiffs sought to include Ohio HCAP days in their respective DSH calculations.  Notwithstanding the fact that the Ohio HCAP program is part of Ohio's State Plan approved under Title XIX (and consequently, Ohio HCAP days must be included in the DSH calculation), the Centers for Medicare and Medicaid Services ("CMS"), through the fiscal intermediary, excluded all HCAP patient days from the Hospitals' DSH calculations.  The issue was appealed to the PRRB, the administrative body charged with deciding Medicare reimbursement appeals.  The PRRB unanimously concluded that the Federal DSH statute required that Ohio HCAP days be included in the DSH calculation.  The Secretary of HHS, through the Administrator of CMS, reversed the PRRB's decision.  See Exhibit E. Plaintiffs timely filed this Complaint to challenge the Secretary's reversal of the PRRB.

The Plaintiffs now move for summary judgment.  As demonstrated below, the Medicare statute requires the inclusion of HCAP days in the DSH calculation. Therefore, the Secretary of HHS should be ordered to recalculate the DSH percentage in accordance with the Medicare statute and make additional DSH payments to the Plaintiffs consistent with the revised calculation.

<u>**STATEMENT OF MATERIAL FACTS**</u>

**A.    The Medicare Program**

Congress enacted the Medicare program in 1965 as Title XVIII of the Social Security Act, codified at 42 U.S.C. § 1395ww(d).  This matter arises under Part A of the Medicare program, which authorizes payments for, among other things, certain inpatient hospital services and related post-hospital services. <u>See</u> 42 U.S.C. §§ 1395c, 1395d.  Specifically, the Plaintiffs seek a determination that the Medicare DSH Adjustment, codified at 42 U.S.C. § 1395ww(d)(5)(F), should include Ohio HCAP program days.

**B.    The DSH Adjustment**

The DSH Adjustment was created as part of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), Pub. L. No. 99-272, § 9105, 100 Sta. 82 (1986).  The DSH Adjustment requires the Secretary to provide increased PPS reimbursement to hospitals that serve a "significantly disproportionate number of low-income patients...."  42 U.S.C. § 1395ww(d)(5)(F)(i)(I).  Whether a hospital qualifies for the DSH Adjustment, and how large an adjustment it receives, depends upon the hospital's DSH percentage, which is defined as the sum of two fractions designed to act as proxies reflecting the number of low-income patients served. <u>Id.</u> at §1395ww(d)(5)(F)(vi).  The first fraction, which is based on the number of low-income Medicare patients served by the hospital, is not at issue in this case.  The second fraction includes all patients days not entitled to Medicare Part A benefits, but which are eligible for medical assistance under a State plan approved under Title XIX.  It is this fraction which is at issue in this dispute.  The second fraction is specifically calculated as follows:

> The fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which consists of <u>patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX of this chapter</u>, but who were not entitled to benefits under part A

of this subchapter [i.e., Medicare], and the denominator of which is the total
number of the hospital's patient days for such period.

See 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added).

**C.    State Medical Assistance Plans Under Title XIX**

Subchapter Title XIX is captioned "Grants to States for Medical Assistance Programs."

42 U.S.C. § 1396 et seq. Title XIX requires States to submit to the Secretary of HHS a "State

Plan" which, among other things, describes all of the programs of "medical assistance" adopted

by the state in accordance with Title XIX. See 42 U.S.C. § 1396a. Among the programs of

medical assistance established by Title XIX is Medicaid. To participate in Medicaid, States must

include in their state plan certain delineated benefits, including coverage for inpatient hospital

services. Id. at § 1396a(a)(10)(A).

Critical to this appeal is the fact that Medicaid is but one of the programs of medical

assistance established or authorized by Title XIX. In addition to Medicaid, Title XIX requires a

"state plan for medical assistance" to include, among other things, a program to compensate

hospitals that serve a disproportionately high number of low-income patients. See 42 U.S.C. §

1396a(a)(13)(A)(iv). In accordance with this mandate, the State of Ohio has included the Ohio

HCAP program as part of its state plan for medical assistance under Title XIX.

A State Plan under Title XIX must be submitted to the Secretary for approval on a yearly

basis. Id. at § 1396. In order to be approved, the State Plan must comply with the requirements

of Title XIX as set forth at 42 U.S.C. § 1396a. Thus, while States have flexibility in designing

programs of medical assistance for inclusion in the Title XIX Plan, the Secretary ultimately must

review the Plan and determine whether it should be approved. And, as demonstrated below, for

each of the years in question in this appeal, the Secretary has approved the Ohio HCAP Program

as part of Ohio's State Plan of medical assistance under Title XIX.

### D.    Ohio's HCAP Program

Codified at Ohio Revised Code ("O.R.C.") § 5112 et seq. and Ohio Administrative Code ("O.A.C.") Rule 5101:3-07.17 et seq., the Ohio HCAP is a program that provides medical assistance to low-income Ohio patients.    See O.R.C.  § 5112.17; see also Transcript of Proceedings ("Hearing Transcript") at 84-86 (R. 186-187), copy attached hereto as Exhibit B; see also Excerpt of Ohio State Plan, attached hereto as Exhibit C.   The HCAP Program provides medical assistance to patients who meet certain specified low-income requirements.   See O.R.C. § 5112.08 et seq.; see also Hearing Transcript at 84-86 (R. 186-87).   The Ohio HCAP Program is funded on both the Federal and State level.   See O.R.C. § 5112.18; see also Hearing Transcript at 87 (R. 187).   It is undisputed that for all years relevant to this appeal, the Ohio HCAP program has been included as part of the Ohio State Plan of medical assistance approved under Title XIX. See Hearing Exhibit 14[1]; see also Hearing Transcript at 88-89 (R. 187-88).

Based on the foregoing, it is beyond dispute that the Ohio HCAP program is part of Ohio's State Plan of medical assistance approved under Title XIX.   Because the DSH calculation includes "patient days for such patients who are eligible for medical assistance under [Title] XIX," Ohio HCAP days must be included in the DSH calculation.   The Decision of the Secretary in refusing to include Ohio HCAP days in the DSH calculation must be reversed.

## ARGUMENT

### A.    STANDARD OF REVIEW

Judicial review of an agency's interpretation of a statutory scheme it administers has two steps. Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837, 843, 104 S. Ct. 2778, 81 L. Ed 2d 694

---

[1] Hearing Exhibit 14 contains documents demonstrating for each year since 1992 that the Ohio HCAP program has been part of the Ohio State Plan approved under Title XIX.  This Exhibit was admitted into the administrative record below, but was omitted from the copy of the record submitted to this Court by the Secretary.  At the Case Management Conference in May, 2006, the Court instructed Defendant to supplement the record with Exhibit 14.

(1984). First, the reviewing court must examine the statutory language and legislative history to determine if Congress has directly spoken to the precise question at issue. Id. Clear Congressional intent must be given effect; an agency's inconsistent interpretation is not entitled to deference. Id. Only if the statute is ambiguous should the reviewing court proceed to the second step of the Chevron analysis, where "the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id.

In this case, there is no factual issue in dispute and this case can be resolved as a matter of law. Fed R. Civ. P. 56(c); See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995). The Medicare statute requires that the DSH calculation include, among other things, patient days for "patients who (for such days) were eligible for medical assistance under a State Plan approved under [Title XIX.]" See 42 U.S.C. § 1395ww(d)(5)(F). It is undisputed that the HCAP program is part of Ohio's State Plan of medical assistance approved under Title XIX. Pursuant to the Medicare statute, all Ohio HCAP days must be included in the DSH calculation. The Secretary's refusal to include these days contravenes the plain language of the statute. The Plaintiff Hospitals are therefore entitled to summary judgment as a matter of law.

**B.    HCAP PROGRAM DAYS MUST BE INCLUDED IN THE DSH CALCULATION BECAUSE HCAP IS A PROGRAM OF MEDICAL ASSISTANCE APPROVED UNDER TITLE XIX OF THE SOCIAL SECURITY ACT.**

> **1.    The DSH Statute Clearly and Unambiguously Requires That The DSH Calculation Include Patient Days For Patients Who Are Eligible for "Medical Assistance Under a State Plan Approved Under Title XIX."**

This case presents only one issue for determination by the Court - whether Ohio HCAP program days must be included in the DSH calculation. The text of the DSH statute clearly and precisely answers this question. The relevant section of the DSH statute provides that the DSH

calculation must include all patient days for patients who were eligible for medical assistance under a State Plan approved under Title XIX:

> The fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which consists of <u>patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX of this chapter</u>, but who were not entitled to benefits under part A of this subchapter [i.e., Medicare], and the denominator of which is the total number of the hospital's patient days for such period.

<u>See</u> 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added).

This text is clear and unambiguous.   It mandates inclusion in the DSH calculation of all days for patients who were eligible for medical assistance under a State Plan approved under Title XIX.  Thus, to determine whether a patient day should be included in the DSH calculation, a court need only determine if the patient day is eligible for "medical assistance under a State Plan approved under Title XIX."  <u>See</u>  <u>Portland Adventist Medical Center v. Thompson</u>, 399 F.3d 1091, 1097 (9th Cir. 2005) (citing 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II)).

The Ninth Circuit in the Portland case addressed the very question at issue here-- the proper interpretation of the DSH statute phrase "eligible for medical assistance under a state plan approved under Title [XIX]."  In <u>Portland</u>, the 9th Circuit rejected the Secretary's assertion that the DSH statute was ambiguous and that the Secretary's decision to exclude certain low-income patient days called 1115 waiver days from the calculation was a permissible interpretation of the DSH statute.  <u>Id.</u> The Ninth Circuit framed its analysis as whether the DSH statute "*requires* the Secretary to regard low-income individuals . . . as 'persons eligible for medical assistance under a State plan approved under Title XIX.'"  <u>Id.</u> at 1095 (emphasis in original).  Tracking the language of the DSH statute, if a patient is "eligible for medical assistance under a State Plan approved under Title XIX," the patient day must be included in the DSH calculation.  <u>Id.</u> at 1096.

After correctly framing the issue, the Court had little trouble in concluding that the patient days at issue in that case should have been included in the DSH calculation. The Court determined that the patient days at issue, 1115 waiver days, was a program of medical assistance that was part of the State Plan approved under Title XIX. Id. at 1097. In its conclusion, the Court stated that:

> The text of the statute, the intent of Congress, and the decisions of this and other courts make it plain that the entire low-income population served by the hospitals -- § 1115 expansion populations -- must be accounted for in the Medicaid DSH fraction.

Id. at 1099.

The framework followed by the Ninth Circuit in Portland is applicable in this case. To determine whether Ohio HCAP program days should be included in the DSH calculation, this Court need only determine whether HCAP program days are eligible for "medical assistance under [the Ohio State Plan] approved under [Title XIX.]" Because the Ohio HCAP Program is part of Ohio's State Plan under Title XIX and because Ohio HCAP provides medical assistance to low-income patients, Ohio HCAP days must be included in the DSH calculation, just as Section 1115 waiver days were included in the Portland case. See 339 F.3d at 1096.

### 2.    The Ohio HCAP Program is Part of Ohio's State Plan Of Medical Assistance Approved Under Title XIX.

Title XIX is captioned "Grants to States for Medical Assistance Programs." 42 U.S.C. § 1396 et seq. Title XIX requires States to submit to the Secretary of HHS a "State Plan" which, among other things, describes all of the programs of "medical assistance" adopted by the state in accordance with Title XIX. See 42 U.S.C. § 1396a. Under Title XIX, a "state plan for medical assistance" must include, among other things, a program to compensate hospitals that serve a disproportionately high number of low-income patients. See 42 U.S.C. § 1396a(a)(13)(A)(iv). In accordance with this requirement, Ohio's State Plan includes the Ohio HCAP program. See

Hearing Exhibit 14; see also O.R.C. § 5112 et seq. The HCAP program compensates hospitals that serve a disproportionately high number of low-income patients and provides payment for certain medical services such as inpatient hospital services. O.R.C. 5112.08; see also 42 U.S.C. § 1396a(a)(13)(A)(iv). Thus, Ohio's HCAP program is part of Ohio's State Plan of medical assistance under Title XIX.

The Ohio State Plan, through the HCAP program which is contained in the Plan, requires Ohio hospitals to provide, without charge to the individual, "medically necessary hospital level services" for those state residents whose income is at or below a specified poverty level and who are not otherwise concurrently receiving coverage under any other part of the State Plan. See Exhibit C at (A)(1). The Ohio State Plan delineates which kinds of medical services are covered by the HCAP program. See Exhibit C. The Ohio State Plan also sets forth the eligibility requirements for HCAP. A person is eligible for basic, medically necessary hospital-level services under HCAP if the person is a current recipient of Ohio's disability assistance program or the person's individual or family income is at or below the current poverty guideline issued by the Secretary pursuant to 42 U.S.C. § 9902. See Exhibit C.

During the PRRB Hearing on October 7, 2004, the Plaintiffs conclusively established that the Ohio HCAP program is part of the Ohio State Plan approved under Title XIX. This is clear from the testimony of Charles Cataline, the Senior Director of Health Policy for the Ohio Hospital Association (the "OHA"):

Q. Now, as part of your job responsibilities at OHA, do you know whether the Ohio HCAP Program is part of [sic] Ohio state plan approved under Title XIX?

A. Yes, it is.

See Hearing Transcript at 88 (R. 187).[2]  The record evidence also includes the Secretary of HHS'

written authorization to include the HCAP program in Ohio's State Plan approved under Title

XIX.  Hearing Exhibit 14 contains documents demonstrating for each year since 1992 that the

Ohio HCAP Program has been part of the Ohio State Plan approved under Title XIX.  See

Hearing Exhibit 14.  Accordingly, it is clear that the Ohio HCAP is a program that provides

medical assistance under Ohio's State Plan approved under Title XIX.[3]

The method of providing federal funding for all state plan programs under Title XIX also

confirms that HCAP is a program of "medical assistance under a State Plan approved under Title

XIX."  Under Title XIX, the federal government provides funds to states to offset some of the

expense of furnishing medical services to low-income persons.  See 42 U.S.C. §§ 1395-1395ggg;

see also, Portland, 399 F.3d at 1093.  To receive federal assistance, a state must submit a state

plan for approval by the Secretary.  See 42 U.S.C. § 1396a.  Under this provision, the federal

government pays each State a percentage of the total expenditure for programs of medical

assistance under the State's Plan.  See 42 U.S.C. § 1396b(a).  This percentage is known as the

"federal medical assistance percentage."  Id.  Only expenditures made under an approved state

plan are eligible for matching federal payments.  See 42 U.S.C. § 1315; 42 U.S.C. § 1396b and

§1396c.  Ohio's HCAP program is part of the Ohio State Plan approved under Title XIX (see

Hearing Exhibit 14), and as such, Ohio received federal funding for the HCAP program.  See

_____

[2] OHA is a trade association whose members include hospitals in Ohio.  See Hearing Transcript at 80-81 (R. 185-86).
[3] Ohio has the authority to determine who is eligible for medical assistance under Title XIX.  See 42 U.S.C. § 1396a(a)(5) ("determination of eligibility for medical assistance under the plan shall be made by the State or local agency administering the State plan. . .").  By including the HCAP program in the Ohio State Plan, the State of Ohio has determined that HCAP recipients are eligible for medical assistance under Title XIX, and as demonstrated herein, the Secretary has approved the inclusion of the HCAP Program in Ohio's State Plan for all relevant years.

Hearing Transcript at 88 (R. 187). Thus, it is clear that Ohio HCAP is a program of "medical assistance under a State Plan approved under Title XIX."[4]

### 3. The PRRB Has Determined That Programs Of Medical Assistance Like The HCAP Program Should Be Included In The DSH Calculation.

The PRRB has unanimously concluded on several prior occasions that charity care days which are part of a State Plan under Title XIX must be included in the DSH calculation. In Jersey Shore Medical Center v. Blue Cross and Blue Shield Association, for example, the Board unanimously held that New Jersey's Charity Care Program days "clearly meet the statutory definition of patient days included in the numerator of the Medicaid proxy and, therefore, should be included in the Provider's DSH calculation." Jersey Shore Medical Center, 1998 WL 773617 at * 8 (PRRB October 30, 1998, Case No. 95-0907) (hereinafter, "Jersey Shore"), copy attached hereto as Exhibit D.

In Jersey Shore, the Board recognized that "[t]he controlling authority at 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) defines patient days included in the numerator of the Medicaid proxy as those days pertaining to patients eligible for medical assistance under a State plan approved under subchapter XIX of this chapter." The New Jersey State Plan, as the Board observed, "was approved under Title XIX of the Social Security Act as required by the statute, and contained the subject Charity Care program which provided medical assistance to eligible persons."

There is no material difference between the factual scenario in Jersey Shore and this case. Like the case in Jersey Shore, CMS, through its fiscal intermediary, has refused to include in the DSH calculation patient days which are eligible for medical assistance under a State Plan approved under Title XIX. In Jersey Shore, the eligible patient days were New Jersey Charity

---

[4] The funding for medical assistance programs under Title XIX, including federal matching funds for HCAP, is commonly referred to as federal financial participation or FFP. See 42 U.S.C. §§ 1393b; 1396r-4(f).

Care days. In this case, the eligible patient days are Ohio HCAP days. The Ohio HCAP program, like the New Jersey Charity Care program, provides medical assistance to low-income patients. See Hearing Transcript at 84 (R. 186); Jersey Shore at * 8 (Exhibit D). The Ohio HCAP Program, like the New Jersey Charity Care Program, receives federal matching funds under Title XIX to cover a part of the program costs for the program days at issue. See Hearing Transcript at 87 (R. 188); Jersey Shore at * 8 (Exhibit D). The eligibility criteria for both programs were approved by the Secretary of HHS as part of each State's Plan under Title XIX. See Hearing Transcript at 89; Hearing Exhibit 14; Jersey Shore at * 8 (Exhibit D). As a result, Ohio HCAP Program days must be included as part of the Providers' Medicare DSH calculation.

In accord with its prior holding in Jersey Shore, the PRRB unanimously held in this case that Ohio HCAP days must be included in the DSH calculation: "It is ...undisputed that HCAP is included in the State of Ohio's approved plan under Title XIX and that HCAP gets Federal matching funds." Ashtabula County Med. Ctr. v. BlueCross BlueShield Assoc., Decision 2005-D49 (August 10, 2005). (R. 53) (Exhibit A). "[T]he Board considers the Federal statute the controlling authority in this case .... The Board finds the [statutory] language clear and unambiguous and finds that the federal DSH statute does not limit the patients covered to Medicaid patients only, but that it includes patients who qualify for 'medical assistance' under Ohio's HCAP State Plan that is approved under Title XIX." Id. "HCAP patient days should, therefore, be included in the calculation of the Medicaid proxy to determine the Providers' DSH adjustments." Id.

It should not be surprising that the Secretary refused to follow the Board's decision in Jersey Shore and promptly reversed the PRRB in this matter. See Ashtabula County Med. Ctr. v. BlueCross BlueShield Assoc., CMS Administrator Decision, October 12, 2005 (R. 13), copy

attached hereto as Exhibit E. The Secretary of HHS has a history of disallowing reimbursement on DSH matters, only to be ultimately corrected by the Federal Courts. See, e.g., Alhambra v. Thompson, 259 F.3d 1071 (9th Cir. 2001); Odessa Regional Hospital v. Leavitt, 386 F.Supp. 2d 885 (W.D. Tex. 2005); Clark Regional Medical Center v. Shalala, 136 F. Supp. 2d 667 (E.D. Ky. 2001).

The Secretary's track record is no accident, but instead arises from what the courts have observed to be HHS' institutional hostility toward the DSH adjustment. See Cabell Huntington Hosp., Inc. v. Shalala, 101 F.3d 984, 990 (4th Cir.1996) ("We cannot .. . allow an agency, hostile from the start to the very idea of making the payments at issue, to rewrite the will of Congress."); Jewish Hospital., Inc. v. Seely of Health & Human Servs., 19 F.3d 270, 276 (6th Cir. 1994) ("[W]e find Jewish Hospital's contention that the Secretary was hostile to the concept of disproportionate share adjustment credible and compelling") (internal quotations omitted); Alhambra v. Thompson, 259 F.3d 1071 at n.4 (noting agreement with the Court in Jewish Hospital which found "credible and compelling evidence of Secretarial hostility to the concept of the disproportionate share adjustment."). The Circuit Court for the District of Columbia observed that the Secretary's interpretation of the DSH statute has "fared poorly, being struck down in four of our sister Circuits." Monmouth Medical Center v. Thompson, 257 F.3d 807, 810 (D.C. Cir. 2001); see also Legacy Emanuel Hosp. & Health Ctr. v. Shalala, 97 F.3d 1261 (9th Cir. 1996); Deaconess Health Serv. Corp. v. Shalala, 8.3 F.3d 1041 (8th Cir.1996) (per curiam).

The Ninth Circuit in Portland likewise noted the Secretary's history of improperly disallowing DSH reimbursement. The Court found that the Secretary's refusal to include all appropriate patients days in the DSH calculation "appears to be the latest in a series of cases in which the Secretary has refused to implement the DSH provision in conformity with the intent

behind the statute [citing <u>Alhambra, Cabell Huntington, Legacy Emanuel, Jewish Hosp</u>., and <u>Deaconess Health Serv.</u>,].”  <u>See</u> <u>Portland</u> 399 F.3d at 1099.  The Court noted that “[i]n each of these cases, the court rejected the Secretary’s position.”  <u>Id</u>.

### 4.    This Court Should Reject The Secretary’s Flawed Assertion That The Term “Medical Assistance” Means Only Traditional Medicaid.

The Secretary asserts one basic argument against the inclusion of HCAP program days in the DSH calculation.  According to the Secretary, the words “medical assistance” should be separated from the phrase “medical assistance under a State Plan approved under Title XIX” and should mean only one thing, “traditional Medicaid.”  <u>See</u> Exhibit E at 12 (R. 13).  This argument conflicts with the plain and unambiguous language of the DSH statute.

The Federal Courts have uniformly rejected the proposition that the DSH statute can be interpreted by focusing on the term medical assistance in isolation from the remaining text in the DSH statute.  Rather, the statute clearly focuses on whether services were provided (and expenditures made) **under a state plan approved under Title XIX**.  <u>See</u> <u>Portland Adventist Medical Center v. Thompson</u>, 399 F.3d 1091, 1099 (9th Cir. 2005); <u>Cookeville Regional Medical Center  v. Thompson</u>, 2005 U.S. Dist. LEXIS 33351 (D.C. Dist. 2005).  In <u>Portland</u>, for example, the Ninth Circuit found that Section 1115 waiver days (which are days under programs that provide medical assistance to individuals who would not traditionally be eligible for the Medicaid program) constitute “medical assistance under a state plan approved under Title XIX” and therefore should be included in the DSH calculation.  In reaching its decision, the Court focused on whether there was an expenditure under the state plan approved under Title XIX.  <u>See</u> <u>Portland</u>, 399 F.3d at 1098.  Furthermore, the Court found instructive what so many prior courts had noted regarding the legislative intent behind the DSH provision:

> Congress’s overarching intent in passing the disproportionate share provision was to supplement the prospective payment system payments of hospitals serving ‘low

income' persons.   The DSH provision directs the Secretary to provide an additional payment to hospitals serving a disproportionate number of low-income patients . . . Congress intended the Medicare and Medicaid fractions to serve as a proxy for all low income patients.  . . . In Legacy Emanuel we noted that patients meeting the statutory requirements for Medicaid do not cease to be low income patients on the days that the state does not pay Medicaid hospital benefits [citation omitted].  So here, patients receiving medical assistance under a §1115 waiver program do not cease to be low-income patients by reason of being in the expansion population [and thus not entitled to traditional Medicaid].  Given the intent behind the DSH provision, they must be included in the Medicaid fraction.

Id. at 1096.

In arguing that the DSH calculation should include only "traditional Medicaid" days, the

Secretary merely confuses what is a straight-forward analysis.  The Secretary states:

The use of the term medical assistance at Sections 1901 and 1905 of the Social Security Act and the use of the term medical assistance at Section 1886(d)(5) of the Social Security Act is reasonably concluded to have the same meaning [that meaning being traditional Medicaid].

This argument is wrong.  First, Section 1901 of the Social Security Act does not define the term

"medical assistance" to be "Medicaid."  Section 1901 states in its entirety:

For the purpose of enabling each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this title. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary, State plans for medical assistance

Thus, Section 1901 does not define "medical assistance" to be "Medicaid."  Rather, Section 1901

creates the appropriation of federal funds for plans of medical assistance under Title XIX of the

Social Security Act.  And, importantly, it is pursuant to this section of Title XIX that HCAP

receives its funding.

Furthermore, although Section 1905 of the Social Security Act does define the phrase "medical assistance," these terms are defined as "payment of part or all of the cost of. . .[twenty-five listed services]. . . for individuals. . . "  See 42 U.S.C. § 1396d.  Ohio HCAP satisfies this definition.  It requires Ohio hospitals to provide patient care including the services enumerated in Section 1905 (codified at 42 U.S.C. § 1396d) to low-income Ohio residents, see O.R.C. 5112.17, and pays hospitals for all or part of the cost of providing such services.  See O.R.C. § 5112.08. Thus, to the extent that the definition of "medical assistance" in Title XIX is applicable, the term is not limited to "traditional Medicaid."  Rather, the term includes the services delineated in 42 U.S.C. § 1396d that are provided under State Plans approved under Title XIX.

If there is any remaining doubt that the DSH calculation cannot be limited to traditional Medicaid days, the Court need only consider the Secretary's decision in January of 2000 to include in the DSH calculation so-called Section 1115 waiver days for patients who do not meet the eligibility requirements of "traditional Medicaid."  Section 1115 of Title XI of the Social Security Act authorizes the Secretary to waive certain Medicaid requirements in order to encourage states to create innovative programs that are "likely to assist in promoting the objectives of . . . [Title] XIX."  See 42 U.S.C. § 1315(a).  The stated objective of Title XIX is to provide medical assistance to individuals "whose income and resources are insufficient to meet [certain health care costs including inpatient hospital services]."  See 42 U.S.C. § 1396d(a).  In some cases, waiver programs may provide medical assistance to expanded eligibility populations of low-income individuals who would not otherwise be eligible for traditional Medicaid.  See 42 U.S.C. § 1315.

In January of 2000, the Secretary completely abandoned the policy of interpreting the DSH calculation as excluding waiver programs for patients who were otherwise not eligible for

traditional Medicaid. <u>See</u> Interim Final Rule, 65 Fed. Reg. 3136 (Jan. 20, 2000). The Secretary referred to such patients as "expanded waiver populations." <u>Id.</u> at 3136-37. In changing the policy, the Secretary conceded that the correction was required by the Medicare statute. <u>Id.</u>

The Secretary's decision to include Section 1115 waiver days in the DSH calculation, including waiver days for patients who would not otherwise qualify for traditional Medicaid, is further confirmation that the DSH statute cannot be interpreted to include only traditional Medicaid days. Rather, to further the intent of Congress, the DSH calculation must include all patient days under a state plan approved under Title XIX which provide medical assistance to "individuals whose income and resources are insufficient to meet [certain health care costs, including inpatient hospital services]." <u>See</u> 42 U.S.C. § 1396a; <u>see also</u> <u>Portland Adventist Medical Center v. Thompson</u> 399 F.3d at 1099. The Ohio HCAP program fits squarely within this stated purpose.

For the reasons discussed above, the phrase medical assistance can only be reasonably interpreted as including **all** "programs of medical assistance which are part of a State Plan approved under Title XIX," including Ohio HCAP. If Congress had intended for the DSH calculation to include only "traditional Medicaid" days, Congress could easily have said so. Instead, Congress chose to include in the DSH calculation patient days "eligible for medical assistance under a state plan approved under Title XIX." If a patient day is "eligible for medical assistance under a state plan approved under Title XIX," it must be included in the Medicare DSH calculation. Ohio HCAP clearly meets this requirement.

## CONCLUSION

For all of the foregoing reasons, the Plaintiffs respectfully request that this Court grant Summary Judgment in favor of Plaintiffs on all counts asserted in the Complaint. Under the

plain and unambiguous language of the Federal DSH Statute, Ohio HCAP days must be included

in the DSH calculation.

Respectfully submitted,

_____ /s/ Peter A. Rosato _____
Albert J. Lucas (Ohio Bar No. 0007676)
Peter A. Rosato (Ohio Bar No. 0068026)
**CALFEE, HALTER & GRISWOLD LLP**
1100 Fifth Third Center
21 East State Street
Columbus, Ohio  43215-4228
Telephone: (614) 621-1500
Facsimile: (614) 621-0010
Alucas@calfee.com
Prosato@calfee.com

Mark Horning (D.C. Bar No. 203323)
John D. Clopper (D.C. Bar No. 483227)
**STEPTOE & JOHNSON LLP**
1330 Connecticut Ave., NW
Washington, D.C. 20036
Telephone (202) 429-3000
Facsimile (202) 429-3902
MHorning@steptoe.com
JClopper@steptoe.com

Dated: May 31, 2006

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2006, I filed electronically a copy of the foregoing Motion for Summary Judgment.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

_____/s/ *Peter A. Rosato*_____
One of the Attorneys for Plaintiffs
