# PROVIDER REIMBURSEMENT REVIEW BOARD DECISION

2005-D49

| | |
|---|---|
| **PROVIDERs –** Ashtabula County Medical Center; The Community Hospital, Akron General Medical Center; Lima Memorial Hospital and The Toledo Hospital<br><br>Provider Nos.: 36-0125; 36-0187; 36-0027; 36-0009 and 36-0068 (respectively)<br><br>vs.<br><br>**INTERMEDIARY –** BlueCross BlueShield Association/ AdminiStar Federal, Inc. | **DATE OF HEARING –** October 7, 2004<br><br>Cost Reporting Periods Ended – Various (See Attached Inventory)<br><br>**CASE NOs.:** See Attached Inventory |

## INDEX

| | Page No |
|---|---|
| Issue............................................................................................................ | 2 |
| Medicare Statutory and Regulatory Background........................................ | 2 |
| Statement of the Case and Procedural History............................................ | 3 |
| Parties Contentions...................................................................................... | 3 |
| Findings of Fact, Conclusions of Law and Discussion................................ | 4 |
| Decision and Order...................................................................................... | 4 |



59

Page 2                                                          CNs.: Various (See Attached Inventory)

ISSUE:

Whether the Intermediary improperly excluded patient days related to Ohio's Hospital Care Assurance Program (HCAP) in the providers' disproportionate share calculations

MEDICARE STATUTORY AND REGULATORY BACKGROUND:

This is a dispute over the amount of Medicare reimbursement due a provider of medical services.

The Medicare program was established to provide health insurance to the aged and disabled. 42 U.S.C. §§1395-1395cc. The Centers for Medicare and Medicaid Services (CMS), formerly the Health Care Financing Administration (HCFA) is the operating component of the Department of Health and Human Services (DHHS) charged with administering the Medicare program. CMS' payment and audit functions under the Medicare program are contracted out to insurance companies known as fiscal intermediaries. Fiscal intermediaries determine payment amounts due the providers under Medicare law and under interpretive guidelines published by CMS. See, 42 U.S.C. §1395(h), 42 C.F.R. §§413.20(b) and 413.24(b).

At the close of its fiscal year, a provider must submit a cost report to the fiscal intermediary showing the costs it incurred during the fiscal year and the proportion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The fiscal intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R. §405.1803. A provider dissatisfied with the intermediary's final determination of total reimbursement may file an appeal with the Provider Reimbursement Review Board (Board) within 180 days of the issuance of the NPR. 42 U.S.C. §1395oo(a); 42 C.F.R. §405.1835.

The Prospective Payment System (PPS) statute contains a number of provisions that adjust reimbursement based on hospital-specific factors. See 42 U.S.C. §1395ww(d)(5). This case involves one of the hospital-specific adjustments, specifically, the disproportionate share adjustment. The "disproportionate share," or "DSH" adjustment, requires the Secretary to provide increased PPS reimbursement to hospitals that serve a "significantly disproportionate number of low-income patients." 42 U.S.C. §1395ww(d)(5)(F)(i)(I). Whether a hospital qualifies for the DSH adjustment, and how large an adjustment it receives, depend on the hospital's "disproportionate patient percentage." See 42 U.S.C. §1395ww(d)(5)(F)(v). The "disproportionate patient percentage" is the sum of two fractions, the "Medicare and Medicaid fractions," for a hospital's fiscal period. 42 U.S.C. §1395ww(d)(5)(F)(vi). The first fraction's numerator is the number of hospital patient days for patients entitled to both Medicare Part A and Supplemental Security Income, excluding patients receiving state supplementation only, and the denominator is the number of patient days for patients entitled to Medicare Part A. Id. The second fraction's numerator is the number of hospital patient days for patients who were eligible for medical assistance under a State plan approved under Title XIX for such period but not eligible for benefits under Medicare Part A, and the denominator is the total number of the

Page 3                                                                 CNs.: Various (See Attached Inventory)

hospital's patient days for such period. Id.; see also 42 C.F.R. §412.106(b)(4). The second fraction is frequently referred to as the Medicaid Proxy and is the only fraction at issue.

STATEMENT OF THE CASE AND PROCEDURAL HISTORY:

This matter involves seventeen different appeals brought by five Ohio providers who qualify for the DSH adjustment. The Medicaid Proxy, the fraction in dispute, accounts for all "patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State Plan approved under Title XIX, but who were not entitled to [Medicare Part A benefits]." 42U.S.C.§1395ww(d)(5)(F)(vi)(II). In this case, all of the Providers participate in Ohio's Hospital Care Assurance Program (HCAP). HCAP is codified at Ohio Revised Code (O.R.C.) §5112 et. seq. and went into effect in 1989. The purpose of HCAP is to reimburse hospitals for the costs associated with uncompensated patient care. HCAP is funded on both the Federal and State levels and has traditionally been included as a part of the Ohio State Plan approved under Title XIX. At issue is whether HCAP patient days should be included in the second fraction to determine the Providers' DSH adjustment.

PARTIES' CONTENTIONS:

The Providers argue that the language of the Medicare DSH statute is clear and unambiguous. Under the statute, the DSH calculation includes all "patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State Plan approved under Title XIX, but who were not entitled to [Medicare Part A benefits]." 42 U.S.C. §1395ww(d)(5)(F)(vi)(II). Because HCAP is part of Ohio's "State Plan approved under Title XIX," Ohio HCAP days should therefore be included in the DSH calculation. The Providers also note that the Board in Jersey Shore Medical Center v. Blue Cross and Blue Shield Association[1] determined that programs of medical assistance should be included in the DSH calculation.

AdminaStar Federal, Inc (Intermediary) contends that, while the Ohio HCAP statutory scheme is part of the overall approved State Medicaid Program, it does not automatically bring HCAP beneficiaries under the DSH Medicaid proxy. The Intermediary argues that the enabling DSH statute and its implementing regulation at 42 C.F.R. §412.106(b)(4) use different terms[2] but, when read collectively, clearly mean that Medicaid eligibility is required to be included in the Medicaid proxy. To obtain HCAP payments, Ohio hospitals must comply with Ohio State

---

1 Jersey Shore Medical Center vs. Blue Cross and Blue Shield Association/ Blue Cross and Blue Shield of New Jersey, PRRB Case No 95-0907, October 30, 1998.
2 42 U.S.C. §1395ww(d)(F)(vi)(II) defines patient days included in the numerator of the Medicaid proxy as "those days pertaining to patients eligible for medical assistance under a state plan approved under subchapter XIX of this chapter." 42 C.F.R. §1412.106(b)(4) requires that "the fiscal intermediary determines, for the same cost reporting period used for the first computation, the number of the hospital's patient days of service for which patients were eligible for Medicaid but not entitled to Medicare Part A, and divides that number by the total number of patient days in the same period."

Page 4                                                                         CNs.: Various (See Attached Inventory)

Revised Code section 5112.17(B), which states that individuals can be covered by HCAP only if they are not recipients of the Medicaid program. The Intermediary concludes from this requirement that HCAP (section 5112.17) patients are not "eligible for assistance under the state plan" because they are not eligible for Medicaid, and inpatient days of care rendered to them cannot be included in the Medicaid proxy.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND DISCUSSION:

The Board, after considering the Medicare law, program instructions and the parties' arguments, finds and concludes as follows:

It is undisputed that 42 U.S.C. §1395ww(d)(5)(F) governs the HCAP issue. Under the statute, the DSH calculation includes all "patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State Plan approved under Title XIX, but who were not entitled to [Medicare Part A benefits]." 42 U.S.C. §1395ww(d)(5)(F)(vi)(II). It is also undisputed that HCAP is included in the State of Ohio's approved plan under title XIX and that HCAP gets Federal matching funds. Further, it is undisputed that the HCAP program compensates hospitals that serve a disproportionately high number of low-income patients.

The Intermediary asserts that the Federal statute, when read collectively with its implementing regulation, limits "medical assistance" to Medicaid. The Intermediary argues that "eligible for medical assistance under a State Plan approved under Title XIX" is the statute's "long hand description of Medicaid" as used in the regulation, and the terms "Medicaid assistance" and "Medicaid" are interchangeable in the context of this appeal. Because the Ohio State Code Section 5112.17 precludes patients who are participants in the Medicaid program from participation in HCAP, the Intermediary reasons that such preclusion must also apply to the Federal DSH Medicaid proxy. The Board does not concur. HCAP provides medical assistance for non-Medicaid patients, and it does not appear that the limitation in the Ohio statute was intended to limit the Federal statute. Regardless, the Board considers the Federal statute the controlling authority in this case and, as discussed earlier, that authority does not contain the limitation on medical assistance that the Intermediary proposes. The Board finds the language clear and unambiguous and finds that the federal DSH statute does not limit the patients covered to Medicaid patients only, but that it includes patients who qualify for "medical assistance" under Ohio's HCAP State Plan that is approved under Title XIX. HCAP patient days should, therefore, be included in the calculation of the Medicaid proxy to determine the Providers' DSH adjustments. Accordingly, the Intermediary's adjustments improperly excluded HCAP patient days from the Providers' DSH calculations.

DECISION AND ORDER:

The Intermediary's adjustments improperly excluded HCAP patient days from the Providers' DSH calculations. HCAP patient days should be included in the calculation of the Medicaid proxy to determine the Providers' DSH adjustment.

Page 5                                           CNs.: Various (See Attached Inventory)

BOARD MEMBERS PARTICIPATING:

Suzanne Cochran, Esquire
Gary B. Blodgett, D.D.S.
Martin W. Hoover, Jr., Esquire
Elaine Crews Powell, C.P.A.
Anjali Mulchandani-West

FOR THE BOARD:

AUG 1 0 2005

*[signature]*
Suzanne Cochran, Esq.
Chairperson

54

Page 6                                              CNs.: Various (See Attached Inventory)

HCAP Inventory

| Provider | Case Number | Fiscal Year End |
|---|---|---|
| Ashtabula County Medical | 99-2234 | 12/31/95 |
|  | 00-2367 | 12/31/96 |
| Community Hospital | 02-0636 | 06/30/99 |
|  | 03-0289 | 06/30/00 |
|  | 04-0009 | 06/30/01 |
| Akron General | 00-1306 | 12/31/96 |
|  | 99-1142 | 12/31/95 |
| Lima Memorial | 01-1143 | 12/31/97 |
|  | 02-0894 | 12/31/98 |
|  | 02-2099 | 12/31/99 |
|  | 03-0021 | 06/30/00 |
| Toledo Hospital | 00-3419 | 12/31/89 |
|  | 00-3420 | 12/31/90 |
|  | 00-3421 | 12/31/91 |
|  | 00-3422 | 12/31/93 |
|  | 00-3423 | 12/31/94 |
|  | 99-2126 | 12/31/95 |