IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ASHTABULA COUNTY MEDICAL    )
CENTER, THE COMMUNITY HOSPITAL,  )   CASE NO: 1:05CV-02365
AKRON GENERAL MEDICAL CENTER,   )
LIMA MEMORIAL HOSPITAL, THE     )
TOLEDO HOSPITAL.                  )
                                 )
             Plaintiffs,     )
                                 )
     v.                        )
                                 )
MICHAEL O. LEAVITT, Secretary, United  )
States Department of Health and Human   )
Services,                        )
                                 )
            Defendant.     )

**PLAINTIFFS' CONSOLIDATED MEMORANDUM IN OPPOSITION
TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
AND REPLY BRIEF IN SUPPORT OF PLAINTIFFS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' CONSOLIDATED MEMORANDUM IN OPPOSITION TO
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND
REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT ........................................................................................................ 1

I.      INTRODUCTION ........................................................................................................ 1

II.     ARGUMENT ................................................................................................................ 2

        A.      THE DSH STATUTE IS UNAMBIGUOUS AND REQUIRES
                THAT PATIENT DAYS FOR PATIENTS WHO WERE
                ELIGIBLE FOR MEDICAL ASSISTANCE UNDER A STATE
                PLAN APPROVED UNDER TITLE XIX BE INCLUDED IN
                THE DSH CALCULATION – HCAP DAYS SATISFY THESE
                REQUIREMENTS ............................................................................................. 2

                1.      OHIO HCAP PROGRAM DAYS ARE DAYS FOR
                        WHICH MEDICAL ASSISTANCE WAS PROVIDED
                        UNDER THE OHIO STATE PLAN APPROVED UNDER
                        TITLE XIX ........................................................................................... 3

                2.      THE DSH STATUTE INCLUDES MORE THAN
                        TRADITIONAL MEDICAID DAYS IN THE DSH
                        CALCULATION ................................................................................... 3

                3.      THE SECRETARY MAY NOT EXCLUDE HCAP DAYS
                        FROM THE DSH CALCULATION MERELY BECAUSE
                        THE HCAP PROGRAM IS NOT MENTIONED BY
                        NAME IN THE DSH STATUTE .......................................................... 4

        B.      THE SECRETARY HAS FAILED TO ESTABLISH THE FIRST
                PRONG OF CHEVRON WHICH REQUIRES A SHOWING
                THAT THE DSH STATUTE IS AMBIGUOUS .................................................. 5

                1.      THE SECRETARY HAS NOT SHOWN THAT ANY
                        PART OF THE DSH STATUTE IS AMBIGUOUS – HE
                        MERELY SUBSTITUTES CLEAR CONGRESSIONAL
                        INTENT WITH HIS RESTRICTIVE INTERPRETATION
                        OF THE DSH CALCULATION .......................................................... 7

                2.      THE SECRETARY IMPERMISSIBLY RESTRICTS THE
                        UNAMBIGUOUS TEXT OF THE DSH STATUTE

UNDER THE GUISE OF STATUTORY
INTERPRETATION...................................................................... 10

C.    THE SECRETARY'S RESTRICTIVE INTERPRETATION OF
THE DSH STATUTE IS UNREASONABLE AND IS NOT
ENTITLED TO DEFERENCE............................................................ 10

1.    IT IS WELL ESTABLISHED THAT NON-MEDICAID
DAYS ARE APPROPRIATELY INCLUDED IN THE
DSH CALCULATION ............................................................ 12

a.    SECTION 1115 WAIVER DAYS ARE NON-
MEDICAID DAYS WHICH ARE INCLUDED IN
THE DSH CALCULATION ........................................ 12

b.    THE SECRETARY MISCONSTRUES THE DSH
CASE LAW IN ARGUING THAT THE DSH
CALCULATION APPLIES ONLY TO
TRADITIONAL MEDICAID ...................................... 14

c.    THE PRRB DECISIONS CITED BY PLAINTIFFS
CORRECTLY DETERMINED THAT THE DSH
STATUTE IS NOT LIMITED TO TRADITIONAL
MEDICAID DAYS.................................................... 16

2.    THE HYPOTHETICAL ADVANCED BY THE
SECRETARY TO SUPPORT HIS MEDICAID-ONLY
ARGUMENT IS FATALLY FLAWED ..................................... 17

3.    THE FACT THAT THE HCAP PROGRAM PROVIDES
PAYMENTS DIRECTLY TO HOSPITALS RATHER
THAN TO THE LOW-INCOME RECIPIENTS OF
MEDICAL ASSISTANCE IS IRRELEVANT FOR
PURPOSES OF CALCULATING DSH ................................... 18

III.    CONCLUSION ........................................................................... 20

CERTIFICATE OF SERVICE ................................................................. 22

## **TABLE OF AUTHORITIES**

**Cases**

Ashtabula County Med. Ctr. v. BlueCross BlueShield Assoc., Decision 2005-D49
(August 10, 2005) ............................................................................................ 16, 17

Buongiorno v. Sullivan, 286 U.S. App. D.C. 104 F.2d 504, 509 (D.C. Cir. 1990) ...................... 6

Bureau of Alcohol, Tobacco & Firearms v. Federal Labor Relations Auth., 464
U.S. 89 (1983) ........................................................................................................ 10

Cabell Huntington Hosp. Inc., v. Shalala, 101 F.3d 984 (4th Cir. 1996) .............................. 14, 15

Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984) ................... passim

Citizens Coal Council v. Norton, 356 U.S. App. D.C. 214, 330 F.3d 478 (D.C.
Cir. 2003) ................................................................................................................ 5

City of Cleveland v. Nuclear Regulatory Comm'n, 314 U.S. App. D.C. 310, 68
F.3d 1361 n.4 (D.C. Cir. 1995) ................................................................................ 9

Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 117 L. Ed. 2d 391, 112 S. Ct.
1146 (1992) ............................................................................................................. 6

Cookeville Regional Medical Center v. Thompson, 2005 U.S. Dist. LEXIS 33351
(D.C. Dist. 2005) ............................................................................................... 12, 13

Deaconess Health Serv. Corp. v. Shalala, 83 F.3d 1041 (1996) ...................................... 15

Granutec, Inc. v. Shalala, 1998 U.S. App. LEXIS 6685 (4th Cir. Apr. 3, 1998) ................... 12

Inwood Lab., Inc. v. Young, 723 F. Supp. 1523 (D.D.C. 1989) ........................................ 6

Jersey Shore Medical Center, 1998 WL 773617 at *8 (PRRB October 30, 1998,
Case No. 95-0907) .............................................................................................. 16, 17

Jewish Hospital Inc. v. Sec'y of Health & Human Servs., 19 F.3d 270 (6th Cir.
1994) ................................................................................................................. 14, 15

Legacy Emanuel Hosp. & Health Ctr. v. Shalala, 97 F.3d 1261 (9th Cir. 1996) .................. 15

Mova Pharm. Corp. v. Shalala, 140 F.3d 1060 (D.C. App. 1998) ................................. 11, 12

Muwwakkil v. Office of Personnel Management, 18 F.3d 921 (Fed. Cir. 1994) .................. 11

New York v. U.S. Envtl. Prot. Agency, 413 U.S. 3 (D.C. Cir. 2005) ............................... 5

Northpoint Tech. Ltd. v. FCC, 412 F.3d 145 (D.C. Cir. 2005) .................................... 11

Oshkosh Truck Corp. v. United States, 123 F.3d 1477 (Fed. Cir. 1997)..................................... 11

Pharm. Research & Mfrs. of Am. v. Thompson, 346 U.S. App. D.C. 158 251 F.3d 219 (D.C. Cir. 2001) ............................................................................................................... 6

Portland Adventist Medical Center v. Thompson, 399 F.3d 1091 (9th Cir. 2005) .............. passim

Railway Labor Executives' Ass'n v. National Mediation Bd., 308 U.S. App. D.C. 9, 29 F.3d 655 (D.C. Cir. 1994) ................................................................................................ 8

Robert Wood Johnson Univ. Hosp. v. Thompson, 297 F.3d 273 n.4 (3d Cir. 2002) .................. 11

Shays v. FEC, 414 F.3d 76 F.3d 76, 2005 U.S. App. LEXIS 14314 (D.C. Cir. 2005) .................................................................................................................................... 6

Stewart v. National Shopmen Pension Fund, 235 U.S. App. D.C. 122, 730 F.2d 1552, 1561 (D.C. Cir. 1984) ................................................................................................ 6, 8

Teva Pharm. Indust. Ltd. v. Crawford, 366 U.S. App. D.C. 203; 410 F.3d 51 (2005).......................................................................................................................................... 8

United States v. Mead Corp., 121 S. Ct. 2164 (2001) .................................................................... 7

United States v. Shimer, 367 U.S. 374 (1961) ............................................................................. 11

**Statutes**

42 U.S.C. § 1395ww(d)(5)(F)................................................................................................... 2, 6, 7

42 U.S.C. § 1396.............................................................................................................................. 3

42 U.S.C. § 1396a............................................................................................................................ 3

42 U.S.C. § 1396a(a)(13)(A)(iv)..................................................................................................... 3

42 U.S.C. § 1396b(v) ..................................................................................................................... 17

O.R.C. § 5112 ............................................................................................................................... 3, 4

O.R.C. § 5112.08 ............................................................................................................................. 3

O.R.C. § 5112.17 .................................................................................................................. 7, 17, 20

**Regulations**

42 C.F.R. § 412.106 as amended January 20, 2000 65 Fed Reg. 3136, 3139 and August 1, 2000 65 Fed Reg. 4705, 47108 ..............................................................................13

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' CONSOLIDATED MEMORANDUM IN OPPOSITION
TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
AND REPLY BRIEF IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

True to his longstanding hostility toward allowing reimbursement to hospitals under the Disproportionate Share ("DSH") statute, the Secretary has blocked the Plaintiff hospitals from including Ohio Hospital Care Assurance Program ("HCAP") days in their DSH calculation. Under the blockade erected by the Secretary -- supposedly justified on the basis of the Secretary's interpretation of the DSH statute -- only patient days that fly the flag of traditional Medicaid may enter into the DSH calculation. But under the DSH statute, more than traditional Medicaid days must be included in the DSH calculation. The Medicare DSH statute unambiguously requires that the DSH calculation include all patient days which "were eligible for medical assistance under a State Plan approved under [Title XIX.]" The Ohio HCAP Program fits squarely within the plain language of this provision. It is a program of medical assistance for low-income Ohio residents, and it is part of the Ohio State Plan approved by the Secretary under Title XIX. Even if the Court determines that the statute is ambiguous and is therefore subject to interpretation by the Secretary, the Secretary's interpretation is not reasonable and should not be given deference. Either way, this Court should put an end to the illegal blockade erected by the Secretary. This Court should allow the inclusion of Ohio HCAP days in the DSH calculation as required by the plain and clear mandate of Congress.

## II.    ARGUMENT

**A.    THE DSH STATUTE IS UNAMBIGUOUS AND REQUIRES THAT PATIENT DAYS FOR PATIENTS WHO WERE ELIGIBLE FOR MEDICAL ASSISTANCE UNDER A STATE PLAN APPROVED UNDER TITLE XIX BE INCLUDED IN THE DSH CALCULATION – HCAP DAYS SATISFY THESE REQUIREMENTS**

This case presents only one issue for determination by the Court - whether Ohio HCAP program days must be included in the DSH calculation.  The text of the DSH statute clearly and precisely answers this question.  The relevant section of the DSH statute provides that the DSH calculation must include all patient days for patients who were eligible for medical assistance under a State Plan approved under Title XIX:

> The fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which consists of <u>patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX of this chapter</u>, but who were not entitled to benefits under part A of this subchapter [<u>i.e.</u>, Medicare], and the denominator of which is the total number of the hospital's patient days for such period.

<u>See</u> 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added).

This text is clear and unambiguous.  To determine whether a patient day should be included in the DSH calculation, a court need only determine if the patient day is eligible for "medical assistance under a State Plan approved under Title XIX."  <u>See</u>  <u>Portland Adventist Medical Center v. Thompson</u>, 399 F.3d 1091, 1096-1097 (9th Cir. 2005) (citing 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II)) (to determine whether patient days should be included in the DSH calculation, the Court need only determine if such days are "eligible for medical assistance under a State Plan approve under Title XIX").  If the patient is eligible for medical assistance under a State Plan approved under Title XIX, the patient day must be included in the DSH calculation.

1.      **Ohio HCAP Program Days Are Days For Which Medical Assistance Was Provided Under The Ohio State Plan Approved Under Title XIX**

Title XIX of the Social Security Act is captioned "Grants to States for Medical Assistance Programs."  42 U.S.C. § 1396 <u>et</u> <u>seq.</u>  Title XIX requires States to submit to the Secretary of HHS a "State Plan" which, among other things, describes all of the programs of "medical assistance" adopted by the state in accordance with Title XIX.  <u>See</u> 42 U.S.C. § 1396a. Under Title XIX, a "state plan for medical assistance" must include, among other things, a program to compensate hospitals that serve a disproportionately high number of low-income patients.  <u>See</u> 42 U.S.C. § 1396a(a)(13)(A)(iv).  In accordance with this requirement, Ohio's State Plan includes the Ohio HCAP program.   <u>See</u> Hearing Exhibit 14 (Supplement to Administrative Record filed June 21, 2006 ("R. Supp.")); <u>see also</u> O.R.C. § 5112 <u>et</u> <u>seq.</u>  The HCAP program compensates hospitals that serve a disproportionately high number of low-income patients and provides payment for certain medical services such as inpatient hospital services.  <u>See</u> O.R.C. § 5112.08; <u>see also</u> 42 U.S.C. § 1396a(a)(13)(A)(iv).  It is simply beyond dispute that Ohio's HCAP program is part of Ohio's State Plan of medical assistance under Title XIX.  Thus, under the DSH statute, Ohio HCAP days must be included in the DSH calculation. <u>See</u> <u>Portland Adventist Medical Center</u>, 399 F. 2d at 1096-1097.

2.      **The DSH Statute Includes More Than Traditional Medicaid Days In The DSH Calculation**

In his Brief, the Secretary repeatedly asserts that the numerator of the DSH calculation includes only traditional Medicaid days.  This argument conflicts with the plain and unambiguous language of the DSH statute.  Congress did not limit the DSH calculation to Medicaid days.  Instead, Congress wrote the DSH calculation to include all patient days eligible for medical assistance under an approved Title XIX state plan.  In Ohio, the Title XIX state plan includes not only the Medicaid program, but also the HCAP program.  <u>See</u> Hearing Exhibit 14

(R. Supp.); see also O.R.C. § 5112 et seq.  Thus, under the plain language of the DSH statute, the DSH calculation must include patient days under all Title XIX programs, including Medicaid and HCAP.  The Secretary's restrictive interpretation of the DSH statute conflicts with the plain mandate of Congress.

It is also clear from the language of the DSH statute that Congress intended the DSH calculation to include all programs of medical assistance, not just Medicaid.  If Congress had intended for the DSH calculation to include only traditional Medicaid days, Congress could easily have said so.  Instead, Congress chose to include in the DSH calculation patient days "eligible for medical assistance under a state plan approved under Title XIX."  Thus, all Title XIX State Plan programs must be included in the DSH calculation.  Ohio HCAP clearly meets this requirement.

> **3.** **The Secretary May Not Exclude HCAP Days From The DSH Calculation Merely Because The HCAP Program Is Not Mentioned By Name In The DSH Statute**

Nor is there any merit in the Secretary's assertion that Ohio HCAP program days should not be included in the DSH calculation because "the Medicare DSH statute does not mention HCAP at all, let alone clearly and precisely state that HCAP days must be [included in the DSH calculation]"  Secretary's MSJ at 16.  The Secretary's argument is contrary to basic principles of statutory construction.  Currently, all fifty states, the United States Territories, and the District of Columbia have chosen to participate in Title XIX federal/state programs.  See United States Department of Health and Human Services, Center for Medicare and Medicaid Services, *Medicaid at A Glance 2005*.  Due to the fact that Title XIX programs are joint federal-state programs, each of the states has unique Title XIX state plans.  These state plans constantly evolve and are approved by CMS on a yearly basis.  To argue that HCAP program days should be excluded from the DSH calculation because the HCAP program is not mentioned by name is

nonsensical.  One could only imagine the burden Congress would face if it had to write the DSH statute to include each Title XIX program by name for each State, and to amend the DSH statute when Title XIX programs change.  Fortunately, Congress chose a more reasonable approach, one which includes all Title XIX medical assistance program days in the DSH calculation.  Under Chevron, as demonstrated below, the analysis should end at that point, and the Secretary's contrary interpretation of the DSH statute should be rejected.

**B.    THE SECRETARY HAS FAILED TO ESTABLISH THE FIRST PRONG OF CHEVRON WHICH REQUIRES A SHOWING THAT THE DSH STATUTE IS AMBIGUOUS**

When a court analyzes an issue regarding an agency's implementation of a statute, the court is confronted with two questions.  The first question is "whether Congress has directly spoken to the precise question at issue."  If congressional intent, as expressed in the words of the statute, is "unambiguous," then the issue is decided, "for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984).   "Only when 'Congress's intent is ambiguous" does the Court proceed to the second step of the inquiry and consider "whether the agency's interpretation is based on a permissible construction of the statute."  New York v. U.S. Envtl. Prot. Agency, 413 F.3d 3, 17 (D.C. Cir. 2005) (quotation omitted); see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984).

In this case, the Secretary glosses over the first prong of Chevron by asserting in conclusory fashion that the DSH statute is ambiguous and thus requires his interpretation.  The mere assertion that a statute is ambiguous does not make it so.  Rather, in determining "whether Congress has directly spoken to the precise question at issue," "courts use 'traditional tools of statutory interpretation.'"  Citizens Coal Council v. Norton, 356 U.S. App. D.C. 214, 330 F.3d 478, 481 (D.C. Cir. 2003) (quoting Pharm. Research & Mfrs. of Am. v. Thompson, 346 U.S.

App. D.C. 158 251 F.3d 219, 224 (D.C. Cir. 2001); Shays v. FEC, 414 F.3d 76, 105, 414 F.3d

76, 2005 U.S. App. LEXIS 14314 (D.C. Cir. 2005) (quotation omitted)).  If the court determines

that Congress has spoken to the precise question presented by the parties, the court must give

effect to the unambiguously expressed intent of Congress.  See Chevron, 467 U.S. at 842.  Thus,

when a statute is clear and unambiguous, "consideration of administrative interpretation contrary

to such language is inappropriate; the agency cannot by its interpretation, override the

congressional will as memorialized in the statutory language."  See Inwood Lab., Inc. v. Young,

723 F. Supp. 1523, 1526 (D.D.C. 1989).

        In this case, the Secretary asserts that his "interpretation" of the DSH statute is entitled to

deference.  However, deference to an administrative agency's interpretation is only appropriate

where the court confronts a gap that cannot be bridged by traditional tools of statutory

construction, and it is evident that Congress intended for the agency to "annotate its words."  See

Buongiorno v. Sullivan, 286 U.S. App. D.C. 104, 912 F.2d 504, 509 (D.C. Cir. 1990).  In the

absence of such express or implied delegation of gap-filling authority, the court presumes that

the "legislature says in a statute what it means and means in a statute what it says. . . ."

Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 254, 117 L. Ed. 2d 391, 112 S. Ct. 1146

(1992); see also Stewart v. National Shopmen Pension Fund, 235 U.S. App. D.C. 122, 730 F.2d

1552, 1561 (D.C. Cir. 1984) ("the best guide to what a statute means is what it says;" had

Congress intended plaintiffs' construction of the statute, "it could easily have said so").

        In the case at hand, the statute, and thus CMS's task in calculating the Medicare DSH

payment, is unambiguous and straightforward.  The Medicare statute requires the inclusion of

patient days for "patients who (for such days) were eligible for medical assistance under a State

Plan approved under [Title XIX.]"  See 42 U.S.C. § 1395ww(d)(5)(F).  The Ohio HCAP

Program satisfies this criteria, for it provides medical assistance to low income Ohio residents, and it is part of Ohio's State Plan approved under Title XIX.  <u>See</u> O.R.C. § 5112.17; <u>see also</u> Transcript of Proceedings ("Hearing Transcript") at 84-89 (R. 186-188), copy attached to Plaintiffs' Motion for Summary Judgment ("MSJ") as Exhibit B; Excerpt of Ohio State Plan (MSJ Exhibit C); Hearing Exhibit 14 (R. Supp.).  Because the statute is clear, the <u>Chevron</u> test is not implicated beyond the first step, and the Secretary's "interpretation" of the statute should not be given deference.

> **1.    The Secretary Has Not Shown That Any Part Of The DSH Statute Is Ambiguous – He Merely Substitutes Clear Congressional Intent With His Restrictive Interpretation Of The DSH Calculation**

As stated above, a court is obliged to accept an agency's interpretation only if "Congress has not previously spoken to the point at issue" and the agency position is "reasonable." <u>Chevron</u>, 467 U.S. 837, 842; <u>see also</u>, <u>United States v. Mead Corp.</u>, 121 S. Ct. 2164, 2172 (2001).  Delegation occurs only "[w]hen Congress has 'explicitly left a gap for the agency to fill.'"  <u>Mead</u>, 121 S. Ct. at 2171 (citing <u>Chevron</u>, 467 U.S. at 843-44).  Here, there is no gap or ambiguity that needs to be filled.  Congress specifically mandated that the DSH calculation include, among other things, patient days for "patients who (for such days) were eligible for medical assistance under a State Plan approved under [Title XIX.]"  <u>See</u> 42 U.S.C. § 1395ww(d)(5)(F).  The Secretary does not identify what part of the statute is ambiguous.  Rather, instead of showing that the statute is ambiguous, the Secretary moves directly to his restrictive view of the statute in order to block Plaintiffs from obtaining reimbursement that Congress clearly intended for disproportionate share hospitals.  Deference to the Secretary is not appropriate under such circumstances.

As noted by the U.S. Court of Appeals for the District of Columbia Circuit, a court does not reach step two of <u>Chevron</u> if Congress has answered the question in the text of the statute:

"the court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue; that intention is the law and must be given effect. Of the traditional tools of statutory construction, the cardinal canon is the first: the Court must presume that a legislature says in a statute what it means and means in a statute what it says. When the words of a statute are unambiguous, this first canon is also the last: judicial inquiry is complete."

Teva Pharm. Indust. Ltd. v. Crawford, 366 U.S. App. D.C. 203; 410 F.3d 51 (2005).

The DSH statute must be taken for what it says. The DSH program must include all patient days for "patients who (for such days) were eligible for medical assistance under a State Plan approved under [Title XIX]." The Court must presume that Congress meant to include patients days arising under all Title XIX medical assistance programs. As one court stated, "the best guide to what a statute means is what it says;. . . had Congress intended plaintiffs' construction of the statute. . . it could easily have said so." Stewart v. National Shopmen Pension Fund, 235 U.S. App. D.C. 122, 730 F.2d 1552 (D.C. Cir. 1984).

Nor is there any merit to the Secretary's contention that deference must be afforded to his interpretation of the DSH statute because the statute does not expressly bar his interpretation. Just because an agency can offer its own interpretation (or in this case a restricted view- not an interpretation) of a clear statute, does not mean that the statute is ambiguous and the reviewing court can skip the first step of Chevron and move to the second. This approach has been raised by the government on prior occasions and has been rejected by the Courts. See Railway Labor Executives' Ass'n v. National Mediation Bd., 308 U.S. App. D.C. 9, 29 F.3d 655, 671 (D.C. Cir. 1994) (en banc). In Railway, the Court of Appeals correctly observed that a statute need not expressly bar a particular interpretation offered by the government to preclude deference under Chevron:

"Simply because the INRA's language does not expressly bar the DOL's construction does not entitle it to deference: to suggest . . . that Chevron step two is implicated any time a statute does not expressly negate the existence of a

> claimed administrative power (i.e. when the statute is not written in 'thou shalt
> not' terms), is both flatly unfaithful to the principles of administrative law . . . and
> refuted by precedent. . .   Rather, because an agency's choices are constrained by
> the statute pursuant to which it acts, a court must first consider whether Congress
> has directly addressed the precise question at issue under step one of Chevron."

Id at 671.  Stated differently, "[a] statute which provides that a thing shall be done in a certain

way carries with it an implied prohibition against doing that thing in any other way."  City of

Cleveland v. Nuclear Regulatory Comm'n, 314 U.S. App. D.C. 310, 68 F.3d 1361, 1366 n.4

(D.C. Cir. 1995).  The Secretary's argument is a clever, but unconvincing, attempt to obtain

deference from the Court without a showing that the DSH statute is ambiguous.

Moreover, a plain reading of the DSH statute shows that it does, in fact, bar the

Secretary's restrictive interpretation. The statute provides that the DSH calculation include all

patient days for patients eligible for "medical assistance under a State Plan approved under [Title

XIX]."  This provision necessarily prohibits the Secretary from refusing to include patient days

in which medical assistance is provided under Title XIX.  The Secretary argues that the DSH

calculation should include only traditional Medicaid days.  But programs of medical assistance

under Title XIX include more than traditional Medicaid.  The Title XIX approved Plan of

medical assistance for Ohio also includes the Ohio HCAP Program.  Although Congress required

that the DSH calculation include all patient days under Title XIX plans, the Secretary is asking

the Court to rewrite the DSH calculation to allow patient days under only one type of Title XIX

Program -- traditional Medicaid.  By writing the DSH statute the way it did, Congress intended

to include in the DSH calculation all patient days under Title XIX programs.  The Secretary's

unlawful attempt to limit Congress' intent cannot be allowed.

**2.     The Secretary Impermissibly Restricts The Unambiguous Text Of The DSH Statute Under The Guise Of Statutory Interpretation**

Repeatedly in the Secretary's Brief, the Secretary asserts that he is "interpreting" the Medicare DSH statute.  However, the Secretary is not interpreting the statute at all, he is rewriting it.  The statute requires that the Medicare DSH calculation include all patient days eligible for medical assistance under a Title XIX State Plan.  There is no dispute that Ohio HCAP is one of the programs of medical assistance approved by the Secretary under Title XIX.  Thus, there is no room for a contrary interpretation of the DSH Statute by the Secretary.  Nor is there room for the Secretary's assertion that only traditional Medicaid days can be included in the DSH calculation.

**C.     THE SECRETARY'S RESTRICTIVE INTERPRETATION OF THE DSH STATUTE IS UNREASONABLE AND IS NOT ENTITLED TO DEFERENCE**

For the reasons stated above, this Court need not reach the second step of the Chevron analysis because the DSH Statute clearly and unambiguously sets forth the requirements for the DSH calculation, and the HCAP program satisfies these requirements. However, even if this Court applies step two of the Chevron analysis, the Secretary's interpretation of the statute must be rejected.

Under step two of Chevron, the court's inquiry turns to the question of whether the agency's interpretation of the statute is "inconsistent with [the] statutory mandate or . . . frustrate[s] the congressional policy underlying a statute." Bureau of Alcohol, Tobacco & Firearms v. Federal Labor Relations Auth., 464 U.S. 89, 97 (1983).  In analyzing whether an agency's interpretation is inconsistent with the statutory mandate or frustrates the congressional policy underlying a statute, the reviewing Court may consider, among other things, the plain language of a statute, as well as the agency's explanation of how its interpretation meets the objective of the statute.  See  Muwwakkil v. Office of Personnel Management, 18 F.3d 921, 925

10

(Fed. Cir. 1994) (refusing to grant deference to regulations contrary to statutory intent); United States v. Shimer, 367 U.S. 374, 383 (1961) (deference is not warranted when it appears from the statute that the interpretation is not one that Congress would have sanctioned); Oshkosh Truck Corp. v. United States, 123 F.3d 1477, 1481 (Fed. Cir. 1997) (refusing to grant deference where agency regulation was at odds with the statutory language); Northpoint Tech. Ltd. v. FCC, 412 F.3d 145, 151 (D.C. Cir. 2005) ("a 'reasonable' explanation of how an agency's interpretation serves the statute's objectives is the stuff of which a 'permissible' construction is made; an explanation that is 'arbitrary, capricious, or manifestly contrary to the statute,' however, is not.").

In this case, the Secretary "interprets" the phrase "medical assistance under a State Plan approved under Title XIX" to mean "eligible for Medicaid" (Secretary's MSJ at 2). This "interpretation" is not entitled to deference because it is unreasonable, it is inconsistent with the statutory mandate, and it frustrates the congressional policy underlying the statute. Furthermore, the Secretary has not provided a reasonable explanation of how his interpretation meets the objective of the statute. [1]

---

[1] The Secretary asserts that his "interpretation" should be given heightened deference because greater deference is required in all cases interpreting the Medicare statute, given the complex and highly technical nature of much of the statutory scheme. See Secretary's MSJ at 13. However, the issue in the present case is as readily reviewable as is any other administrative action as it does not involve in depth medical or Medicare program expertise. See Robert Wood Johnson Univ. Hosp. v. Thompson, 297 F.3d 273, 282 n.4 (3d Cir. 2002) (unusual deference is not required for interpretations of the Medicare statute that do not involve medical or Medicare program expertise). See also Mova Pharm. Corp. v. Shalala, 140 F.3d 1060 (D.C. App. 1998).

In Mova, the FDA sought to defend its interpretation of the requirements for abbreviated new drug applications. It argued that although the statute did not require its interpretation, a literal reading of the law would result in consequences that Congress could not have intended. Id. at 1067. While acknowledging that the statute has been described as "very confusing and ambiguous," as well as "cumbersome," the court found that the FDA's interpretation did not survive the first step of the Chevron analysis, under which the agency's interpretation receives no deference. Id. at 1069 (internal quotations and citations omitted). The court held that "the FDA's successful-defense requirement is inconsistent with the unambiguously expressed intent of Congress. The rule is gravely inconsistent with the text and structure of the statute." Id. The court went on to note, after analyzing the impact of the FDA's interpretation vis-à-vis the impact of the statute's plain language, that "[w]e do not think that it is sufficiently clear that Congress intended the [FDA's] reading of the statute to justify disregarding the most natural reading of the statutory text." Id. at 1070, 1072 (also that it is "not inconceivable that Congress meant what the statute says"). The D.C. Circuit affirmed the district court.

1.    **It Is Well Established That Non-Medicaid Days Are Appropriately Included In The DSH Calculation**

The Secretary's Brief contains one basic argument - the only days which can be included in the DSH calculation are days for which patients were eligible for traditional Medicaid and, therefore, non-Medicaid days must be categorically excluded.  Because patients eligible for Ohio's HCAP program are not eligible for traditional Medicaid, the Secretary contends that HCAP days must be automatically excluded from the DSH calculation.  This argument is based upon the Secretary's faulty "interpretation" that the DSH statute categorically excludes all non-Medicaid days.  This interpretation has been rejected by the Courts, Congress, and even the Secretary himself.

a.    **Section 1115 Waiver Days Are Non-Medicaid Days Which Are Included In The DSH Calculation**

Section 1115 waiver days are one example of non-Medicaid medical assistance days that are included in the DSH calculation.  Although Section 1115 waiver days are non-traditional Medicaid days, every court that has considered the issue has concluded that such days satisfy the statutory requirement of "medical assistance under a State Plan."  See Portland Adventist Medical Center v. Thompson, 399 F.3d 1091 (9th Cir. 2005); Cookeville Regional Medical Center v. Thompson, 2005 U.S. Dist. LEXIS 33351 (D.C. Dist. 2005).  (ordering the Secretary to include Section 1115 waiver days in the Medicare DSH calculation).  Furthermore, on January

---

After the district court's decision in Mova, the FDA voluntarily suspended its interpretation of the statute.  See Granutec, Inc. v. Shalala, 1998 U.S. App. LEXIS 6685 (4th Cir. Apr. 3, 1998).  In Granutec, the plaintiff complained of FDA's failure to follow its own regulations.  In deciding this case, the Fourth Circuit agreed with the D.C. district court that the statute was unambiguous, although complex.  Id. at *17.  "In light of this plain and unambiguous language, FDA's interpretive authority with regard to the statutory provision is limited to the extent that Congress has already spoken directly to the issue addressed by the regulation.  Id. at *17-18 (citing Chevron).  The court declined to assess the plaintiff's and FDA's arguments that the regulation clarifies the statute or that the legislative history supports FDA's interpretation because such an analysis occurs only at the second prong of the Chevron analysis.  Id. at *19-20.  "Having found the exclusivity requirements embodied in the statutory language . . . . clear and conclusive, we are bound to hold invalid any attempt to alter the terms of that statute."  Id. at *20.

20, 2000, the Secretary promulgated a regulation requiring that these non-Medicaid days be included in the DSH calculation. See 42 C.F.R. § 412.106 as amended January 20, 2000 65 Fed Reg. 3136, 3139 and August 1, 2000 65 Fed Reg. 4705, 47108. The Secretary's argument that the DSH calculation can include only Medicaid days cannot be reasonable when other non-Medicaid days are included in the calculation.

The Secretary attempts to distinguish Section 1115 waiver days from HCAP days by arguing that the DSH statute did not clearly require the inclusion of Section 1115 waiver days until recently when Congress enacted the Deficit Reduction Act ("DRA"). The Secretary is correct that the DRA reaffirms that Section 1115 wavier days are included in the Medicare DSH calculation, even though Section 1115 individuals are not eligible for Medicaid. The Secretary is incorrect, however, in arguing that the DSH statute did not require the inclusion of Section 1115 waiver days until Congress enacted the DRA. The courts in Portland and Cookeville Regional both concluded that Section 1115 waiver days met the requirement of "medical assistance under a state plan," and these decisions both came before enactment of the DRA. In Portland, the 9th Circuit rejected the Secretary's assertion that the DSH statute was ambiguous and that the Secretary's decision to exclude Section 1115 waiver days from the calculation was a permissible interpretation of the DSH statute. Id. The Ninth Circuit framed its analysis as whether the DSH statute "*requires* the Secretary to regard low-income individuals . . . as 'persons eligible for medical assistance under a State plan approved under Title XIX.'" Id. at 1095 (emphasis in original). Tracking the language of the DSH statute, if a patient is "eligible for medical assistance under a State Plan approved under Title XIX," the patient day must be included in the DSH calculation. Id. at 1096. Under this framework, the Court had little trouble in concluding

that the 1115 waiver program at issue in that case was a program of medical assistance in an approved Title XIX state plan. Id. at 1097.

The Secretary's attempt to negate the importance of Section 1115 waiver days serves only to undermine his attempt to limit the DSH calculation to traditional Medicaid days. To the extent there was any ambiguity about Congress' intent to require DSH reimbursement for non-Medicaid medical assistance furnished under a Title XIX state plan, which there was none, the DRA eliminated this ambiguity. The DRA, consistent with the decision reached in the Portland case, indicates that the Secretary must include in the DSH calculation all patient days eligible for medical assistance under a Title XIX State Plan, not just those days eligible for traditional Medicaid.

The inclusion of Section 1115 waiver days in the DSH calculation supports the inclusion of Ohio HCAP program days in the calculation. As with Section 1115 waiver programs, the HCAP program provides medical assistance to persons that are not eligible for Medicaid. As with Section 1115 waiver programs, the HCAP program is part of a State Plan approved under Title XIX. As with Section 1115 waiver days, HCAP program days must be included in the DSH calculation.

       b.    **The Secretary Misconstrues The DSH Case Law In Arguing That The DSH Calculation Applies Only To Traditional Medicaid**

In his Brief, the Secretary asserts that the federal appellate courts which have addressed the DSH calculation have concluded that it includes only traditional Medicaid. The Secretary cites the following cases in support of this assertion: Cabell Huntington Hosp. Inc., v. Shalala, 101 F.3d 984 (4th Cir. 1996); Jewish Hospital Inc. v. Sec'y of Health & Human Servs., 19 F.3d 270 (6th Cir. 1994); Legacy Emanuel Hosp. & Health Ctr. v. Shalala, 97 F.3d 1261 (9th Cir.

1996) and <u>Deaconess Health Serv. Corp. v. Shalala</u>, 83 F.3d 1041 (1996)).[2]  Once again, the Secretary's argument misses the mark.

None of the courts in the <u>Cabell</u> line of cases held that the DSH calculation includes only traditional Medicaid days.  These cases all addressed a separate issue - whether the term "eligible" requires the inclusion of unpaid Medicaid days (as opposed to paid Medicaid days) in the DSH calculation.  For instance, in <u>Cabell Huntington</u>, the court specifically defined the issue as whether "DSH payments should take account of only those inpatient hospital days which are *actually paid* by West Virginia's Medicaid program . . . or whether the calculation should include all the days of patients who otherwise qualify for Medicaid but who may have exceeded the number of days covered under the state Medicaid plan."  83 F.3d at 986-87 (emphasis added).  The other cases are the same.  <u>See</u> e.g., <u>Jewish Hospital</u>, supra, 19 F.3d at 272.  Notably, the courts in these cases concluded that the DSH statute includes both paid and unpaid Medicaid days, contrary to the Secretary's restrictive interpretation of the statute.  These cases did not address the question presented in this case - whether the DSH calculation includes those patients who were ineligible for Medicaid, but nevertheless eligible for other medical assistance provided by a State Plan approved under Title XIX.  As demonstrated above, the DSH Statute answers this question in the affirmative because it requires the DSH calculation to include "all patient days for patients who (for such days) were eligible for medical assistance under a State Plan approved under [Title XIX.]."  Ohio HCAP falls squarely within the statutory requirements.

---

[2] The Secretary also says that it is ironic that Plaintiffs cite the above line of cases in their Motion for Summary Judgment.  The Plaintiffs cited this line of cases, not because the cases speak directly to the definition of medical assistance, but to show the Secretary's "institutional hostility toward the DSH adjustment" <u>see</u> <u>Cabell Huntington Hosp., Inc. v. Shalala</u>, 101 F. 3d 984, 990 (4th Cir. 1996) and the Secretary's poor track record in his attempts to improperly restrict the DSH statute.  <u>See</u> <u>Legacy Emmanual</u>, 97 F.3d 1261 (9th Cir. 1996); <u>Deaconess Health Serv. Corp. v. Shalala</u>, 83 F.3d 1041 (8th Cir. 1996) (per curiam).

      **c.**      **The PRRB Decisions Cited By Plaintiffs Correctly Determined that The DSH Statute Is Not Limited To Traditional Medicaid Days**

The Secretary argues that Plaintiffs' citations to the administrative decisions in the <u>Jersey Shore</u> appeal and in the underlying appeal in this matter are misguided because these decisions were subsequently reversed by the Secretary.  Lacking from the Secretary's discussion, however, is any analysis showing that his reversals were appropriate under the DSH statute.

In <u>Jersey Shore Medical Center</u>, 1998 WL 773617 at *8 (PRRB October 30, 1998, Case No. 95-0907), the PRRB unanimously held that New Jersey's Charity Care program days "clearly meet the statutory definition of patient days included in the numerator of the Medicaid proxy and, therefore, should be included in the Provider's DSH calculation."  <u>Jersey Shore Medical Center</u>, <u>supra</u>, 1998 WL 773617 at 8.  The Board reasoned that because the New Jersey State Plan "was approved under Title XIX of the Social Security Act as required by the [DSH] statute, and contained the subject Charity Care program which provided medical assistance to eligible persons," the Charity Care days were required to be included in the DSH calculation.  <u>Id.</u> The <u>Jersey Shore</u> decision speaks directly to the exact issue at hand and, therefore, it is an important decision for the Court to consider in deciding this case.

So to is the Board's decision in this matter.  In <u>Ashtabula</u>, the Board had little trouble disposing of the primary argument advanced by the government - that the DSH statute applies only to traditional Medicaid.  With respect to this contention, the Board properly concluded that:

> [T]he Board considers the Federal statute the controlling authority in this case ....
> The Board finds the [statutory] language clear and unambiguous and finds that the
> federal DSH statute does not limit the patients covered to Medicaid patients only,
> but that it includes patients who qualify for 'medical assistance' under Ohio's
> HCAP State Plan that is approved under Title XIX. . . . HCAP patient days
> should, therefore, be included in the calculation of the Medicaid proxy to
> determine the Providers' DSH adjustments.

<u>Ashtabula County Med. Ctr. v. BlueCross BlueShield Assoc.</u>, Decision 2005-D49 (August 10, 2005).  (R. 53).  The Secretary may choose to disagree with the conclusions reached in <u>Jersey Shore</u> and <u>Ashtabula</u>, but he cannot show that these cases were incorrectly decided.

      **2.**      **The Hypothetical Advanced By The Secretary To Support His Medicaid-Only Argument Is Fatally Flawed**

The Secretary contends that anyone eligible for HCAP would also become eligible for traditional Medicaid, leading to absurd results.  Using a hypothetical to illustrate his point, the Secretary argues that if an undocumented alien received HCAP benefits and such benefits constituted "medical assistance under the State Plan approved under Title XIX," the program would violate 42 U.S.C. § 1396b(v), which prohibits payments to any state for "medical assistance furnished to an alien who is not lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law."  The absurdity lies in the argument advanced by the Secretary, not in the inclusion of HCAP days in the DSH calculation.

There are at least two flaws that are fatal to the Secretary's argument.  First, an illegal alien not lawfully residing in the United States is not a lawful Ohio resident and therefore is not eligible for HCAP.  Second, the HCAP statute specifically states that individuals who qualify for traditional Medicaid are not eligible to participate in the HCAP program.  <u>See</u> O.R.C. § 5112.17.  The converse of this rule is also true - a person who is eligible for HCAP is not eligible for traditional Medicaid.  Once again, the Secretary fails to recognize that programs of medical assistance under Title XIX include more than traditional Medicaid.  Just as New Jersey has a charity care program that is included in the New Jersey state plan of medical assistance, Ohio has the HCAP program.  These programs of medical assistance are similar to Medicaid in that they provide medical assistance to low-income persons, but they are separate programs with

eligibility criteria independent of Medicaid.  Medical assistance programs such as HCAP must be included in the DSH calculation because they satisfy the requirements set forth in the statute: medical assistance furnished under a State Plan that has been approved by the Secretary under Title XIX.  The Secretary's flawed hypothetical does not alter this conclusion.

>    **3.    The Fact That The HCAP Program Provides Payments Directly To Hospitals Rather Than To The Low-Income Recipients Of Medical Assistance Is Irrelevant For Purposes Of Calculating DSH**

The Secretary argues that HCAP days should not be considered in the DSH calculation because "HCAP is a program of providing Medicaid DSH payments to hospitals, not a program of providing Medicaid benefits to individuals."[3]  The Secretary is wrong because the HCAP program does provide medical assistance to individuals.  Under HCAP, individuals receive "medically necessary hospital-level services," which are defined as "all inpatient and outpatient services covered under the Medicaid program … with the exception of transplantation services and services associated with transplantation."  See State Plan Excerpt (MSJ Exhibit C).  Clearly, HCAP provides medical assistance to individuals.  Furthermore, the Ohio State Plan under Title XIX establishes the "criteria, standards, requirements and limitations" that are applicable in order for individuals to receive HCAP benefits:

>    (B)  Determination of eligibility.
>
>    A person is eligible for basic, medically necessary hospital-level services under the provisions of this rule if the person is a current recipient of the disability assistance (DA) program or the person's individual or family income is at or below the current poverty guideline issued by the secretary pursuant to 42 U.S.C. 9902 that applies to the individual or family when calculated by either of the methods described in paragraphs (B)(2)(a) and (B)(2)(b) of this rule on the date these services were provided.
>
>    (1)    For purposes of this rule, a "family" shall include the patient, the patient's spouse, and all of the patient's children, . . .natural or adoptive, under the age of eighteen who live in the home.  If the patient is under the age of eighteen, the

---

[3] It is worth noting that the Secretary, in his eagerness to have the court find the terms "medical assistance" and "Medicaid" synonymous, uses the terms interchangeably. This serves only to confuse the issue.

> "family" shall include the patient, the patient's natural or adoptive parent(s), and the parent(s)' children, natural or adoptive under the age of eighteen who live in the home. If the patient is the child of a minor parent who still resides in the home of the patient's grandparents, the "family" shall include only the parent(s) and any of the parent(s)' children, natural or adoptive who reside in the home.
>
> (2) "Income" shall be defined as total salaries, wages, and cash receipts before taxes; receipts that reflect reasonable deductions for business expenses shall be counted for both farm and non-farm self-employment. Income will be calculated by:
>
> > (a) Multiplying by four the person's or family's income, as applicable, for the three months preceding the date hospital services were provided;
> > (b) Using the person's or family's income, as applicable, for the twelve months preceding the date hospital services were provided.
>
> (3) For outpatient hospital services, a hospital may consider an eligibility determination to be effective for ninety days from the initial service date, during which a new eligibility determination need not be completed. Eligibility for inpatient hospital services must be determined separately for each admission, unless the patient is readmitted within forty-five days of discharge for the same underlying condition. Eligibility for the disability assistance program must be verified on a monthly basis.[4]

Likewise, individuals, not hospitals, are the ones that fill out and submit applications for HCAP services:

> (4) The hospital shall accept application for services without charge until three years from the date of the follow-up notice, as described in paragraphs (c)(2) and (c)(3) of this rule, has elapsed.
>
> (5) Applicants shall cooperate in supplying information about health insurance or medical benefits available so a hospital may determine any potential third-party resources that may be available.
>
> (6) Nothing in this rule shall be construed to prevent a hospital from requiring an individual to apply for eligibility under the medical assistance program before the hospital processes an application under this rule.[5]

As demonstrated above, persons, not hospitals, are eligible for HCAP benefits. The Secretary's characterization of the HCAP program is simply incorrect.

---

[4] See State Plan Excerpt (MSJ Exhibit C) (strikethrough text omitted; emphasis added).
[5] See State Plan Excerpt (MSJ Exhibit C) (strikethrough text omitted).

Furthermore, the fact that the program provides reimbursement to hospitals for providing medical assistance to individuals is irrelevant under the DSH statute. This point is most clearly shown by the fact that the Medicaid program works in the same manner as the HCAP program. That is, individuals who are deemed eligible for Medicaid benefits under the State Plan approved under Title XIX are provided medical assistance by a medical provider. The medical provider is then reimbursed for those services through the provider's participation in the Medicaid program. The HCAP program works the same way. Individuals who are deemed eligible for HCAP benefits (medically necessary hospital-level services) under the State Plan approved under Title XIX are provided such medical assistance by a medical provider. The medical provider is then reimbursed for those services through its participation in the HCAP program. Thus, the fact that hospitals receive payment for HCAP services rendered to HCAP beneficiaries is of little importance. The main issue is whether "medical assistance under a state plan approved under Title XIX is provided," and in the case of HCAP, it is.

### III.    CONCLUSION

Ohio HCAP is a program that provides medical assistance to low-income Ohio patients. See O.R.C. § 5112.17; see also Hearing Transcript at 84-86 (R. 186-187) (MSJ Exhibit B); Ohio State Plan (MSJ Exhibit C). It is undisputed that for all years relevant to this appeal, the Ohio HCAP program has been included as part of the Ohio State Plan of medical assistance approved under Title XIX. See Hearing Exhibit 14 (R. Supp); see also Hearing Transcript at 88-89 (R. 187-88) (MSJ Exhibit B). Because the DSH calculation includes "patient days for such patients who are eligible for medical assistance under [Title] XIX," Ohio HCAP days must be included in the DSH calculation. Based on the foregoing, the Hospitals' Motion for Summary Judgment should be granted, and the Secretary's Cross-Motion for Summary Judgment should be denied.

Respectfully submitted,

_____/s/ *Peter A. Rosato*_____
Albert J. Lucas (Ohio Bar No. 0007676)
Peter A. Rosato (Ohio Bar No. 0068026)
Karen A. Visocan (Ohio Bar No. 0062378)
**CALFEE, HALTER & GRISWOLD LLP**
1100 Fifth Third Center
21 East State Street
Columbus, Ohio  43215-4228
Telephone: (614) 621-1500 Facsimile: (614) 621-0010
Alucas@calfee.com
Prosato@calfee.com
Kvisocan@calfee.com


Mark Horning (D.C. Bar No. 203323)
John D. Clopper (D.C. Bar No. 483227)
**STEPTOE & JOHNSON LLP**
1330 Connecticut Ave., NW
Washington, D.C. 20036
Telephone (202) 429-3000 Facsimile (202) 429-3902
MHorning@steptoe.com
JClopper@steptoe.com

Counsel for Plaintiffs

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 8, 2006, I filed electronically a copy of the foregoing **Plaintiffs' Consolidated Memorandum In Opposition To Defendant's Cross-Motion For Summary Judgment And Reply Brief In Support Of Plaintiff's Motion For Summary Judgment.** Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.


　　　　　　　　　　　　　　　　　　/s/ *Peter A. Rosato*
　　　　　　　　　　　　　　　One of the Attorneys for Plaintiffs