IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ASHTABULA COUNTY MEDICAL CENTER, et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:05CV02365 (RWR) |
| MICHAEL O. LEAVITT, Secretary, United States Department of Health and Human Services, | ) ) ) ) ) | |
| Defendant. | ) ) ) | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiffs in this case challenge an interpretation of the Medicare statute by the Secretary

of the United States Department of Health and Human Services.  In the government's opening

memorandum, the Secretary argued that his interpretation of the statute is reasonable and is

entitled to deference.  ("Def.'s MSJ") at 10-12.  In their Opposition and Reply to the Defendant's

Memorandum in Support of cross-motion for summary judgment ("Pls.' Reply"), plaintiffs

fundamentally mischaracterize the Secretary's position and the issue in this case and misapply

the Chevron standard that governs this case.  Specifically, plaintiffs argue that (1) the statute

refers to the State plan approved under title XIX, (2) that the State of Ohio's Hospital Care

Assurance Program ("HCAP") is "part of" the State plan (Pls.' Reply at 3), (3) that HCAP is a

program of "medical assistance," and (4) applying plaintiffs' interpretation of the term "medical

assistance," the patients at issue are receiving medical assistance "under" the State plan.  Under

plaintiffs' theory, the Secretary is therefore unambiguously required to include patient days for these patients in the numerator of the Medicaid fraction of the Medicare DSH calculation.

The Medicare statutory provision at issue provides additional Medicare payments (Medicare "DSH" payments) to hospitals that serve a disproportionate share of low income patients, as determined in accordance with the statute and implementing regulations. The Medicare provision at issue refers to the Medicaid statute. The statute requires the Secretary to count, among other things, patient days of patients who are "eligible for medical assistance under a State plan approved under title XIX [of the Social Security Act, i.e., the Medicaid statute]." As reflected in the governing regulations, the Secretary interpreted the quoted statutory phrase as meaning "eligible for Medicaid." The Secretary counts patient days of patients eligible for Medicaid in calculating the numerator of the "Medicaid fraction" (or "Medicaid proxy"), a component of the Medicare DSH calculation. This interpretation reasonably gives the phrase "eligible for medical assistance under a State plan approved under title XIX" as used in the Medicare DSH statute the same meaning that the phrase has in title XIX of the Social Security Act (the Medicaid statute).

In determining the amount of Medicare reimbursement due to plaintiff hospitals for the fiscal years at issue in this case, the Secretary did not count the patient days at issue, which are attributable to patients who are not eligible for Medicaid but who receive charity care from Ohio hospitals (pursuant to HCAP). It is uncontested that such individuals do not meet the eligibility requirements for Medicaid benefits set forth in the Medicaid statute and the State of Ohio's title XIX (Medicaid) State plan. Nevertheless, plaintiffs argue that the statute clearly requires the Secretary to count the patient days attributable to these patients in the numerator of the Medicaid fraction of the Medicare DSH calculation.

This memorandum addresses the arguments in plaintiffs' opposition and reply memorandum. Plaintiffs' assertions are at times simply wrong and at times puzzling – plaintiffs mischaracterize the Secretary's position, apply faulty logic and analysis regarding statutory interpretation and deference, and draw erroneous conclusions. Nothing in plaintiffs' arguments demonstrates that the Secretary's interpretation of the statute is unreasonable. The statutory provision at issue here does not unambiguously require the counting of the patient days at issue in this case. The statutory provision at issue involves the complex interaction of the Medicare and Medicaid statutes, and this Court should defer to the Secretary's reasonable interpretation regarding the numerator of the Medicaid fraction of the Medicare DSH calculation.

## ARGUMENT

### I. PLAINTIFFS FUNDAMENTALLY MISCHARACTERIZE THE SECRETARY'S POSITION AND THE ISSUE BEFORE THE COURT IN THIS CASE.

Plaintiffs challenge the Secretary's interpretation of the statutory phrase "eligible for medical assistance under a State plan approved under Title XIX of the [Social Security] Act." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). As reflected in applicable regulations, the Secretary interpreted this statutory phrase to mean "eligible for Medicaid." See 42 C.F.R. § 412.106(b)(4) (1999); Pls.' Reply at 3. As an initial matter, plaintiffs incorrectly indicate that the Secretary's "one basic argument" is that "non-Medicaid days must be categorically excluded." Pls.' Reply at 12. See also id. at 5 (stating that the Secretary takes the position that the statute "requires his interpretation").

According to plaintiffs, the Secretary's position is that the Medicare statute unambiguously prohibits the counting of non-Medicaid patient days in the numerator of the Medicaid fraction of the Medicare DSH calculation. This characterization reflects a fundamental

misunderstanding of the Secretary's position and does not frame the issues properly.  The question in this case is whether the statute <u>requires</u> the counting of the patient days at issue in this case, which are attributable to patients who are not eligible for Medicaid but who receive charity care pursuant to Ohio's Hospital Care Assurance Program ("HCAP"); under HCAP, hospitals can qualify for <u>Medicaid</u> DSH payments if they provide charity care to qualifying individuals who do not meet the eligibility criteria for Medicaid benefits.[1]  Contrary to plaintiffs' erroneous characterization, the Secretary does not (and need not) argue that the statute unambiguously prohibits the counting of the non-Medicaid patient days at issue in this case; rather, the Secretary argues that he reasonably excluded the non-Medicaid patient days because the statute does not unambiguously require their inclusion.

In addition, plaintiffs repeatedly mischaracterize the question in this case, arguing that the Secretary is excluding patient days of patients eligible for "medical assistance" patient days of patients eligible for medical assistance under a State plan approved under title XIX.  <u>See</u>, <u>e.g.</u>, Pls.' Reply at 3 ("Congress wrote the DSH calculation to include all patient days eligible for medical assistance under an approved Title XIX State plan.")  Plaintiffs' characterization of the issue is incorrect.  The Secretary does not argue that the agency has discretion to exclude patient days of patients who are eligible for medical assistance under an approved Title XIX State plan – the real question in this case is whether the non-Medicaid patient days at issue are in fact patient days of patients "eligible for medical assistance under a State plan approved under title XIX [of the Social Security Act]."  Plaintiffs' entire reply brief begs this question and is therefore unpersasive.  Plaintiffs simply conclude without any persuasive support or analysis that the

_____

[1]Medicaid DSH payments are a supplemental Medicaid payment to hospitals that serve a disproportionate share of low income patients.  <u>See</u> 42 U.S.C. § 1396r-4.

patient days at issue are attributable to patients eligible for medical assistance under the State

plan approved under title XIX.

As explained further below, the Secretary has concluded that they are not.  This

interpretation of the Medicare statute is reasonable and is entitled to deference.

II.    **THE SECRETARY'S INTERPRETATION OF THE STATUTORY PHRASE "ELIGIBLE FOR MEDICAL ASSISTANCE UNDER A STATE PLAN APPROVED UNDER TITLE XIX" IS REASONABLE AND IS ENTITLED TO DEFERENCE**.

This case requires a straightforward application of the now familiar two step analysis set

forth in Chevron CITE.  The first question to address is whether the Medicare statute requires the

Secretary to count DSH calculation, patient days of patients who are not eligible for Medicaid but

who receive charity care from Ohio hospitals pursuant to HCAP program.  Because the answer is

no, the Secretary's reasonable interpretation that HCAP charity care is not medical assistance is

entitled to deference.

A.    **The Statute Does Not Unambiguously Require the Inclusion of Non-Medicaid Patient Days in the Numerator of the Medicaid Fraction of the Medicare DSH Calculation.**

The Medicare DSH statute does not explicitly refer to the category of patient days at issue

in this case – 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) does not mention HCAP specifically or

programs like HCAP.  Contrary to the plaintiffs' characterization of the Secretary's position,

Pls.' Reply at 4-5, the Secretary does not take the position that HCAP days should not be

included because the Medicare DSH statute fails to mention the HCAP program by name.

Rather, the Secretary's point is simply that the Medicare DSH statute does not directly address

the precise category of patient days at issue, and therefore does not unambiguously require their

inclusion.  Plaintiffs argue that the statutory phrase "medical assistance under a State plan

approved under title XIX of the [Social Security] Act" clearly and unambiguously means something other than Medicaid and requires the counting of non-Medicaid patient days. Plaintiffs' position does not withstand scrutiny.

Title XIX of the Social Security Act, referenced in 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II), is the Medicaid statute. See Complaint, ¶ 19 ("Congress enacted Title XIX of the Social Security Act ('Medicaid') in 1965.") Thus, the DSH provision of the Medicare statute specifically refers to the Medicaid statute, which in turn defines "medical assistance" at 42 U.S.C. § 1396d(a). The Medicare statute, title XVIII of the Social Security Act, does not define "medical assistance."

Contrary to plaintiffs position, nothing in the statute indicates that the term "medical assistance" in the phrase "medical assistance under a State plan approved under title XIX" must (unambiguously) refer to something other than Medicaid benefits. Plaintiffs' analysis, such as it is, consists of conclusory statements, unsupported assertions, and undisputed characterizations that prove nothing about whether Congress intended to require the counting of the non-Medicaid patient days at issue. For example, plaintiffs point out that a title XIX State plan for medical assistance must include a mechanism for providing Medicaid DSH payments to hospitals. Pls.' Reply at 3. But this says nothing about the requirements for the Medicare DSH calculation – that portion of the Medicare statute does not unambiguously state that, if an individual is not eligible for Medicaid benefits but receives charity care through a program of providing Medicaid DSH payments to hospitals, the individual is "eligible for medical assistance under a State plan approved under title XIX."

The term "medical assistance" is not defined in the Medicare DSH statute, and nothing in the statutory language shows congressional intent to prohibit the Secretary from interpreting the term "medical assistance" (as used at 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II)) in light of the

Medicaid statute. To the contrary, the legislative history clearly supports the Secretary's interpretation. See, e.g., H.R. Rep. No. 99-241 at 16 (1986), reprinted in 1986 U.S.C.C.A.N. 579, 594. ("The proxy measure for low-income would be the percentage of a hospital's total patient days attributable to medicaid patients . . . .") Plaintiffs do not acknowledge this contrary authority, nor can they explain it away. To the extent that the term "medical assistance" is not defined by the Medicare statute, the Court should defer to the Secretary's reasonable interpretation of the term.

In their motion for summary judgment, plaintiffs argue that the charity care at issue in this case qualifies as "medical assistance" according to the definition supplied by title XIX. See Pls.' MSJ at 16; 42 U.S.C. § 1396d(a). In his memorandum in support of his cross-motion, the Secretary demonstrated that the patients at issue were not eligible for "medical assistance" as defined in title XIX because they are not included in the list of populations who can be made eligible for medical assistance under § 1396d(a)(i)-(xiii). Def.'s MSJ at 24. Unable to rebut this argument, plaintiffs are left to make the somewhat astonishing argument that, in construing the term "eligible for medical assistance under a State plan approved under title XIX [of the Social Security Act]," the Secretary (and the Court) must ignore title XIX of the Social Security Act. Plaintiffs argue that "Congress intended the DSH calculation to include all programs of medical assistance, not just Medicaid." Pls.' Reply at 4. Under plaintiffs' interpretation of "medical assistance," the term means something broader than Medicaid benefits, and plaintiffs urge the Court to substitute their interpretation of "medical assistance" for that of the Secretary's. But the statute does not compel plaintiffs' interpretation – as stated above, the Medicare DSH statute does not define the term "medical assistance" and therefore does not prohibit the Secretary from interpreting the term in light of the Medicaid statute. "Interpretation of a word or phrase depends

upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." Dolan v. United States Postal Serv., 126 S. Ct. 1252, 1257 (2006). Here, the Secretary, in interpreting the statutory phrase "eligible for medical assistance under a State plan approved under title XIX [of the Social Security Act]," reasonably looked to title XIX. Title XIX of the Social Security Act provides definitions of "medical assistance" ( 42 U.S.C. § 1396d(a)) and "State plan" (42 U.S.C. § 1396a) and criteria for approval of State plans. Id.

Plaintiffs also argue that Congress could have restricted the numerator of the Medicaid fraction of the Medicare DSH calculation to "traditional Medicaid" days if it wanted to, but instead chose to include all days for patients who were eligible for medical assistance under the State plan. Pls' reply at 4-7. This argument is unpersuasive. First, the argument suggests erroneously that there is a category of "traditional" Medicaid days (for patients who qualify for Medicaid benefits) and a category of "non-traditional" Medicaid days (for patients who do not qualify for "traditional" Medicaid benefits but who nevertheless qualify for "medical assistance under a State plan approved under title XIX"). The term "Medicaid" is not a statutorily defined term. Medicaid refers to the joint State/Federal program of medical assistance authorized under title XIX of the Social Security Act. If a patient is not eligible for Medicaid, then the patient is not eligible for medical assistance under a State plan approved under title XIX. Second, Congress likely would have used the language it did to refer to Medicaid eligible patients, given that "medical assistance" and "State plan" are terms defined in Title XIX and "Medicaid" is not. See 42 U.S.C. § 1396a; 42 U.S.C. § 1396d.

Moreover, plaintiffs' argument also undercuts their own position – if Congress had intended to require the counting of the patient days at issue in this case, it could have explicitly

referenced patients who are not eligible for Medicaid but who receive charity care pursuant to a Medicaid DSH program. Plaintiffs themselves refer to the calculation at issue as the "Medicaid Proxy" (Complaint ¶30), but they argue that the statute unambiguously requires the Medicaid Proxy to include non-Medicaid patient days. The Secretary respectfully submits that the Medicare statute does not unambiguously require the counting of the patient days at issue in this case.

Plaintiffs' continued reliance, Pls.' Reply at 12, on Portland Adventist Medical Center v. Thompson, 399 F.3d 1091 (9th Cir. 2005) and Cookeville Regional Medical Center v. Thompson, 2005 U.S. Dist. LEXIS 33351 (D.C. Dist. 2005), appeal docketed, No. 05-5495 (D.C. Cir. Dec. 23, 2005) is similarly misguided. Nothing in these cases demonstrates that the statute unambiguously requires the counting of the non-Medicaid patient days at issue in this case, which are attributable to patients who are not eligible for Medicaid but who receive charity care from Ohio hospitals pursuant to HCAP. Those cases concerned a different category of patient days, and the opinions in those cases hinged critically on a statutory provision that is not at issue in this case (section 1115 of the Social Security Act, 42 U.S.C. § 1315). Moreover, the Portland Adventist and Cookeville courts concluded (erroneously, in the Secretary's view) that the patients at issue in those cases were in fact eligible for Medicaid. The cases do not support the proposition that the Secretary is required to include non-Medicaid patient days in the numerator of the Medicaid fraction of the Medicare DSH calculation.

Finally, Congress has recently made clear that Portland Adventist and Cookeville were wrongly decided. See Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 5002, 120 Stat. 4, 31 (February 8, 2006) (codified in part at 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II)) ("DRA"). Section 5002 of the DRA provides:

> In determining under subclause (II) the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under title XIX, the Secretary **may**, to the extent and for the period the Secretary **determines appropriate**, include patient days of patients not so eligible but who are regarded as such because they receive benefits under a demonstration project approved under title XI.  (Emphasis added.)

This provision clarifies that the Secretary is authorized, <u>but not required</u>, to count patient days attributable to section 1115 expansion populations[2], who are not eligible for medical assistance under a State plan approved under title XIX but who regarded as eligible under a demonstration project approved under title XI of the Social Security Act.

Given that Congress clarified that the Secretary can, but is not required, to include a specific category of non-Medicaid patient days in the DSH calculation, there is absolutely no support for plaintiffs' argument that the Secretary is unambiguously compelled by the same language to include another category of non-Medicaid patient days (HCAP or charity care days). Indeed, Congress's clarification stands for the opposite proposition.  In addition, plaintiffs' argument would lead to a strange and incongruous result, considering Congress's recent clarification.  According to plaintiffs, these days must be counted if they are days provided pursuant to the HCAP program, but if the Secretary were to approve a demonstration project under section 1115, thereby allowing the Ohio Medicaid program to pay for those days, plaintiffs would have to agree that the Secretary has the discretion to exclude these days in the Medicare DSH calculation.

**B.      The Secretary's Interpretation of the Statute is Reasonable.**

---

[2] Section 1115 expansion populations are patients who are not eligible for medical assistance under a Medicaid State plan but who receive medical assistance under a demonstration project approved under section 1115(a)(2) of the Social Security Act (42 U.S.C. § 1315).

-10-

Plaintiffs argue that the Secretary's interpretation of the statute is unreasonable.  Pls.'
Reply at 11 et seq.  As reflected in the governing regulations, see 42 C.F.R. § 412.106(b)(4)
(1999), the Secretary interpreted the statutory phrase "eligible for medical assistance under a
State plan approved under title XIX [of the Social Security Act]" to mean "eligible for
Medicaid."  In interpreting 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II), the Secretary reasonably looked
to title XIX of the Social Security Act, which is referenced in the Medicare statutory provision at
issue.

Title XIX of the Social Security Act is the Medicaid statute.  Under the Medicaid statute,
States provide Medicaid benefits to individuals meeting applicable Medicaid eligibility criteria,
and the federal government makes federal matching payments.  For purposes of Medicare DSH,
the Medicare statute uses (among other things) Medicaid eligibility as a measure of low-income
status.  See Cabell Huntington Hosp. Inc., v. Shalala, 101 F.3d 101 F.3d 984, 889 (4th Cir. 1996)
("It is apparent that 'eligible for medical assistance under a State plan' refers to patients who
meet the income, resource, and status qualifications specified by a particular state's Medicaid
plan . . . .").  As noted above, plaintiffs themselves refer to the calculation at issue in this case as
the Medicaid Proxy.  Complaint ¶ 30.  Thus, the Secretary reasonably interpreted "eligible for
medical assistance under a State plan approved under title XIX" as referring to individuals who
are eligible for Medicaid benefits because they meet the applicable Medicaid eligibility criteria
("eligible for Medicaid").

    **C.    The Secretary Reasonably Determined That the Charity Care Patients At Issue – Who, By Definition, Are Not Eligible for Medicaid – Are Not "Eligible for Medical Assistance Under a State Plan Approved Under Title XIX."**

Plaintiffs concede that the patient days at issue in this case are attributable to patients who are not eligible for Medicaid. Pls.' Reply at 3. Nevertheless, plaintiffs argue that the charity care patients at issue are "eligible for medical assistance under a State plan approved under title XIX." Pls.' Reply at 3; see 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). As stated above, plaintiffs argue that (1) the statute refers to the State plan approved under title XIX, (2) that HCAP is "part of" the State plan (Pls.' Reply at 3), (3) that HCAP is a program of "medical assistance," and (4) applying plaintiffs' interpretation of the term "medical assistance," the patients at issue are receiving medical assistance "under" the State plan.

The Secretary submits that plaintiffs' theory is contorted at best, but even if plaintiffs' interpretation was a plausible construction of the statute, it is not the only permissible construction. The Secretary's policy of looking to Medicaid eligibility is at least as reasonable as plaintiffs' suggestion of including patients who do not qualify for Medicaid benefits but who have some connection to Medicaid DSH payments provided to hospitals. See Cabell Huntington, 101 F.3d at 889 ("It is apparent that 'eligible for medical assistance under a State plan' refers to patients who meet the income, resource, and status qualifications specified by a particular state's Medicaid plan . . . ."). Moreover, plaintiffs' theory ignores the basic structure and purpose of title XIX of the Social Security Act (the Medicaid statute), under which States provide medical assistance in the form of Medicaid benefits to individuals who meet the eligibility criteria for Medicaid benefits, and the federal government makes federal matching payments; under plaintiffs' theory, the statute unambiguously requires the Secretary to count patient days of patients who are not eligible for Medicaid benefits.

Plaintiffs utterly fail to demonstrate that the Secretary's interpretation of the Medicare DSH statute – that the statutory phrase "eligible for medical assistance under a State plan

approved under title XIX" means eligible for Medicaid – is unreasonable. Plaintiffs argue that

Medicaid is not the only type of "medical assistance" contemplated by the Medicare DSH statute

(Pls.' Reply at 4, 9) and that patients having any connection to the title XIX State plan receive

"medical assistance" "under" the State plan. Plaintiffs' alternative definition of "medical

assistance" does not demonstrate that the Secretary's interpretation is unreasonable. As stated

earlier, the Medicare statute does not define "medical assistance, but "medical assistance" is

defined under title XIX of the Social Security Act, see 42 U.S.C. § 1396d(a), which sets forth 13

categories of individuals who States may choose to make eligible for "medical assistance" under

their State plans. Contrary to the plaintiffs' argument, if an individual does not fall within one of

these categories, the care provided to that individual is not "medical assistance" pursuant to title

XIX. Id. Other than through specific waiver authority that is not relevant here (i.e., section 1115

of the Social Security Act), neither the Secretary nor a state is free to expand upon this

enumerated list of optional categories of individuals, as plaintiffs suggest.[3]

For this same reason, the second part of plaintiffs' argument – that the Secretary

somehow magically converted HCAP individuals into patients eligible for "medical assistance"

(as that term is used in the Medicare DSH statute) when he approved the Ohio State plan – is also

plainly wrong. Looking at the provisions of the Ohio State Plan which plaintiffs offer, it appears

that HCAP sets forth only three requirements: 1) that the patient not be eligible for Medicaid; 2)

that the patient be at or below the federal poverty line; and 3) that the patient be an Ohio resident.

---

[3] Indeed, another flaw in plaintiffs' argument is the fact that state plans specifically explain which populations are "eligible" for medical assistance in a section of the state plan that is separate from the payment provisions of the state plan. It is important to note that, in this case, plaintiffs have only cited to the payment provisions of Ohio State plan. These provisions are not generally intended to convey those populations that the state is intending to make eligible for medical assistance.

According to the plaintiffs, all individuals that fit into these categories would be eligible for "medical assistance" under the Ohio State plan, even if they clearly fall outside one of the 13 enumerated optional categories set forth in section 1396a(d) or were otherwise expressly excluded from eligibility by some other provision of the statute.  For example, 42 U.S.C. § 1396b(v) prohibits payment to any state for "medical assistance furnished to an alien who is not lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law."  Id.  According to plaintiffs' argument, an unlawful alien resident of the state of Ohio, below the poverty line, would be eligible for "medical assistance" by virtue of the approval of Ohio's state plan despite the fact that title XIX prohibits payment for "medical assistance" for that person.  Indeed, there are potentially numerous references in the payment provisions of numerous state plans to individuals who the Secretary would not, and could not, approve as eligible for "medical assistance."[4]

As the Secretary explained in his opening brief (Def.'s MSJ) at 8, HCAP is the State of Ohio's version of the required Medicaid DSH payment.  In setting payment rates for covered services, a State plan must take into account (in a manner consistent with section 1923 of the Social Security Act, 42 U.S.C. § 1396r-4) the situation of hospitals which serve a disproportionate number of low-income patients with special needs.  42 U.S.C. § 1396a(a)(13)(A).  Section 1396r-4 offers States great flexibility in how they set rates to take into

---

[4] This argument is particularly troubling, because if the Court were to hold that the patients at issue were eligible for medical assistance under their respective State plans, the Secretary would reevaluate whether those plans complied with the various provisions of title XIX that restrict who can be made eligible under a State plan, the services that can be regarded as medical assistance, or provide substantive rights to those patients that are. See e.g., 42 U.S.C. §§ 1396a(a)(10); 1396d(a)(i-xiii) and 1903(v)(restricting categories of eligible individuals and services for certain groups); 42 U.S.C. §§ 1396a(a)(7), (8), (23), (26), (34), and (43) (beneficiary protections).

account the needs of hospitals that serve a disproportionate share of low income patients.  Ohio,

in its State plan, has chosen to identify hospitals that offer free care to patients that meet certain

criteria (but are not eligible for Medicaid) as qualifying for the required Medicaid DSH payment.

But the patients who receive charity care pursuant to HCAP do not meet the eligibility criteria for

Medicaid benefits under the State plan.  They are therefore not "eligible for medical assistance

under the State plan approved under title XIX" (under the Secretary's reasonable interpretation).

The statute does not compel the Court to adopt plaintiffs' contorted interpretation of the statute.

> **D.    The Secretary's Interpretation of the Medicare Statute is Entitled to Deference.**

Plaintiffs argue erroneously that the Secretary's interpretation of "eligible for medical

assistance under a State plan approved under title XIX" is not entitled to deference.  Pls.' Reply

at 10-11.  In so doing, plaintiffs misstate the standard of review that the Supreme Court

articulated in Chevron USA, Inc. v. Natural Resources Defense Council, Inc., 467 US. 837

(1984).  Plaintiffs' fundamentally mischaracterize the Secretary's position as being that

"deference must be afforded because the statute does not expressly bar his interpretation."  Pls.'

Reply at 8.  The Secretary does not claim his interpretation is entitled to deference because his

interpretation is not expressly barred.  The Secretary's interpretation of the Medicare DSH statute

is entitled to deference because the statute does not directly address the precise category of

patient days at issue in this case; because the statute is ambiguous and the Secretary's

interpretation is reasonable and permissible; and because the Secretary's interpretation is set forth

in the governing federal regulations, which were subject to notice and comment rulemaking.

Furthermore, every Circuit Court of Appeals to address the meaning of the Medicare DSH

provision has found that the Secretary's interpretation of the Medicare statute is entitled to

deference under <u>Chevron</u>.  <u>See e.g.</u> <u>Cabell Huntington</u>, 101 F.3d at 986 ; <u>Jewish Hospital Inc. v.</u>

<u>Sec'y of Health & Human Servs.</u>, 19 F.3d 270, 273 (6th Cir. 1994); <u>Legacy Emanuel Hosp. &</u>

<u>Health Ctr. v. Shalala</u>, 97 F.3d 1261, 1264 (9th Cir. 1996); <u>Portland Adventist Medical Center v.</u>

<u>Thompson</u>, 399 F.3d 1091, 1095 (9th Cir. 2005).  Plaintiffs confuse the first step of the <u>Chevron</u>

analysis ("whether the statute is clear") with whether <u>Chevron</u> applies at all.  The Court of

Appeals for the District of Columbia Circuit has already rejected the similar argument which

Plaintiffs made in their opening brief, that the Secretary's interpretation of the Medicare DSH

statute was not entitled to <u>Chevron</u> deference because of an alleged "hostility" to the Medicare

DSH payment. <u>See</u>  <u>North Broward Hosp. Dist. v. Shalala</u>, 172 F.3d 90, 94 (D.C. Cir. 1999).

III.    **COURTS HAVE PREVIOUSLY INTERPRETED THE STATUTORY
        PHRASE "ELIGIBLE FOR MEDICAL ASSISTANCE UNDER A STATE
        PLAN APPROVED UNDER TITLE XIX" AS MEANING ELIGIBLE FOR
        MEDICAID.**

In the government's opening brief, the Secretary noted that several federal courts of

appeals have adopted the position that "eligible for medical assistance under a State plan

approved under title XIX" means eligible for Medicaid.  Def.'s MSJ at 2, 17.  Plaintiffs seek to

distinguish the authorities cited by the Secretary by arguing that those cases (which plaintiffs

initially argued were relevant) dealt only with whether the DSH statute required the inclusion of

Medicaid eligible days where the Medicaid program did not make a payment.  Pls.' Reply at 14-

15.  This distinction is without a difference because in these cases the courts parsed the meaning

of the phrase "eligible for medical assistance under a State plan."  In rejecting the Secretary's

prior policy of excluding patient days of patients who were eligible but for whom Medicaid did

not make payment, those courts found that Congress intended that the Medicaid proxy count all

patients that meet the eligibility criteria for Medicaid, regardless of whether the days were

actually paid.  See e.g. Cabell Huntington, 101 F.3d at 889 ("It is apparent that 'eligible for medical assistance under a State plan' refers to patients who meet the income, resource, and status qualifications specified by a particular state's Medicaid plan . . . ."); id. at 990 ("Section 1396d defines 'medical assistance' to include twenty-five medical services.  If Congress had wanted 'medical assistance' to take on a completely different meaning in the context of this Medicaid proxy provision of the DSH calculation, Congress could easily have so indicated.)"; Legacy Emanuel, 97 F.3d at 1264 ("[T]he word 'eligible' refers to whether a patient is capable of receiving . . . Medicaid."); id. at 1265 ("We believe the language of the Medicare reimbursement provision is clear:  the Medicaid proxy includes all patient days for which a person was eligible for Medicaid benefits, whether or not Medicaid actually paid for those days of service.").  Plaintiffs' assertion that the decision in those cases are not relevant here is simply untrue.  Four Circuit Courts of Appeals have found that the numerator of the Medicaid fraction of the Medicare DSH calculation is tied to Medicaid eligibility.

## CONCLUSION

For the foregoing reasons, the Secretary's exclusion of the patient days at issue in this case reflects a reasonable interpretation of the Medicare statute and should be upheld under the deferential <u>Chevron</u> standard. Accordingly, the defendant respectfully requests that the Court grant defendant's motion for summary judgment and dismiss plaintiffs' complaint with prejudice.[5]

Respectfully submitted,

_____/s/_____
KENNETH L. WAINSTEIN
United States Attorney
D.C. Bar No. 451058

_____/s/_____
MEGAN L. ROSE
Assistant United States Attorney
NC Bar No. 28639
Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
(202) 514-7220/FAX: (202) 514-8780

DAVID HOSKINS
U.S. Department of Health and Human Services
Office of the General Counsel
Centers for Medicare & Medicaid Services Division
330 Independence Ave., S.W., Room 5309
Washington, D.C.  20201

---

[5] In the event the Court grants plaintiffs' motion for summary judgment and denies Defendant's motion for summary judgment, the proper course of action would be for the Court to remand the matter to the agency. Plaintiffs' request for relief, Plaintiffs' MSJ at 16, is inappropriate.

OF COUNSEL:

DANIEL MERON
General Counsel

KATHLEEN H. MCGUAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General Counsel
for Litigation

United States Department of Health
and Human Services